NEW-YORK,
Nov. 1810.

BALLOU
v.
KIP.

THIS was an action of debt, brought against the defendant, as sheriff of *Oneida* county, for the *escape* of *Oliver Babcock*, a prisoner in his custody on an execution in favour of the plaintiff. The cause was tried at the *Oneida* circuit, the 11th *June*, 1810, before Mr. Justice *Spencer*.

At the trial, the plaintiff proved a judgment against *Babcock* for 3,000 dollars of debt, and 72 dollars and 56 cents, damages and costs; and that a *ca. sa.* was issued thereon, and a return of *Babcock* in custody. This action was commenced in *May*, 1809. *Babcock*, after being in custody, was seen out of gaol, in the office of *Reuben Leavenworth*, and in the dwelling-house of *Lewis Berry*, in *Whitestown*.

The defendant gave in evidence, under the notice subjoined to his plea, that the court of common pleas of *Oneida* county had established gaol-liberties; that *Babcock* was admitted to the liberties on giving a bond with surety to the defendant, according to the statute. The advertent and involuntary escape, and a return before suit brought, the sheriff was not liable for an escape.

Do not the *reputed* liberties, in such a case, afford the best evidence of the actual liberties of the gaol?

Where the bounds of the liberties of the gaol were marked by no visible monuments, and the survey of them, as appointed by the court of common pleas, was, in some parts, vague and uncertain, and a prisoner who had given bond to the sheriff for the liberties, without intending to go beyond them, went into a house within the *reputed* limits, but which proved not to be within the acknowledged *actual* liberties, and returned within the actual liberties before suit brought; it was held, that this being an inadvertent

defendant then produced the record of the establishment of the liberties, which consisted of a *field-book*, containing the courses and distances of the lines of the liberties; but the lines did not include the house of *Berry*, or the office of *Leavenworth*, where the prisoner was seen. To the field-book a map was attached, but it did not appear to have been made upon actual survey, nor were the office and house designated on the map; nor were any boundaries marked upon the map to denote that they were within the liberties; though it appeared probable that the map was intended to represent the house and office as being within the liberties. There was a manifest mistake in the courses and distances, for they could not be made to unite and come together, so as to include the gaol. The house and office were within the *reputed* liberties, and were universally so considered, until after the alleged escape; and the prisoner returned within the actual liberties before suit brought.

The judge charged the jury, that the facts entitled the plaintiff to recover, and the jury found a verdict accordingly.

A motion was made to set aside the verdict, and for a new trial; and the following points were raised, which were submitted to the court without argument.

1. The sheriff is not liable for an escape arising from an error in the court of common pleas, in appointing the liberties of the gaol.

2. The *reputed* liberties being recognised by the plaintiff, he is bound by them.

3. The defendant is entitled to the benefit of the act passed the 8th of *April*, 1810, relative to gaol-liberties, &c.

*Per Curiam.* The escape charged in this case was by going into the office of *Reuben Leavenworth*, and into the house of *Lewis Berry*. The proof was, that those

places were within the reputed liberties, and were so understood, not only by all the prisoners, but by all other persons acquainted with the liberties, until after the alleged escape. It was further shown, that there must have been a mistake in the courses and distances contained in the field-book upon record, upon which the liberties were established, for they would not unite so as to include the gaol. There was also a map annexed to the field-book, and it appeared probable, but by no means certain, that the map was intended to represent the house and office as being within the liberties, though the courses and distances by the field-book would not include them. Upon these facts, it is difficult to rely upon the courses and distances as any certain guide; and the reputed liberties may perhaps be considered as affording the best evidence in the case, of the actual liberties of the gaol. But it is not requisite to go so far; for if the office of *Leavenworth* and the house of *Berry* be not within the liberties, the escape, by going into them, was at least inadvertent and involuntary, and a return from them into the actual liberties before suit brought, was a good defence according to the decision in *Dole* v. *Moulton*, (2 *Johns. Cases*, 205.) The case of *Tillman* v. *Lansing*, (4 *Johns. Rep.* 45.) only applies to an escape voluntarily and knowingly made; and the weight of evidence in this case is clearly in favour of the allegation, that the escape, if any, by going into that office, was not wilful, but involuntary; and as the prisoner returned within the undisputed liberties before suit brought, the verdict ought to have been for the defendant.

In *Bissel* v. *Kip*, (5 *Johns. Rep.* 89.) it was observed, in the opinion delivered by the court, that going into *Leavenworth's* office was an escape. But the testimony in that case was direct and positive, that upon no construction would the liberties include that office, and the reputation of its being within the liberties was not supported by the aid of the map, and the arrest there was while

NEW-YORK,
No<sup>v</sup>. 1810.

KIP
v.
BABCOCK.

the prisoner was in the office, and before his return. Nor was the fact of going into the office material in that cause; for there was proof of an instance of wilful escape from the reputed, as well as from the actual liberties.

The verdict in this case must be set aside, and a new trial awarded, with costs to abide the event of the suit.

Motion granted.