The Chancellor.
This cause came up from a judgment of the supreme court, in an action of debt for the escape of Edward EUinge, from the liberties of the gaol of Ulster county, in which he was imprisoned on a ca. sa. in favour of the defendant in error, en a judgment obtained by him in 1807. There are several counts in the declaration, to which the defendant in the cause below plead nil debet, and atnorg ither pleas, that Edward EUinge, having been admitted to the liberties aforesaid, according to the statute in that case made and provided, wrongfully, without the privity or the knowledge of the defendant, escaped and went out of the limits; that he afterwards voluntarily and of his own accord, returned back again into the custody of the said defendant, and then and there always, afterwards, remained in execution.
The leading points discussed in this cause arise on two of the revised laws, one concerning sheriffs and their duties, passed the 20 th March, 180.,* and the other relative to gaols, passed the 30 th day of the same month.† The first of these comprises a variety of provisions of English statutes, from the 9 Edw. II. stat. 2. to the 8 & 9 Wm. III. and by its 23d section, the 7th section of the 27th chapter of the latter English statute is perpetuated, which *566 enacts, that if any person charged in execution shall escape from prison, by any ways or means howsoever, the creditor shall have a new execution. The second is principally a compilation of pre- ■ existing statutes of this state. The 6th section is from the act regulating the liberties of the gaols, passed the 5th day of April, 1798.*
Some distinctions have been attempted in argument, to be deduced from the order of time in which these revised laws were passed; there was only an intervention of ten days. The statutes which were re-enacted remained in force till those revised took effect; and whether the one or 1 the other was first passed, in the progress of the revision, depended on no preconcerted arrangement, for it v/as well known that no regard was paid to circumstances of that kind ; they were both parts of the same system, calculated to harmonize, and reduce to one point of view; every statutory provision relating to the same subject, and not, so far as the one was a mere substitute for the other, to vary their construction; and so it has been ruled in this court.
In the court below, the present cause was decided, as to the construction of the statute concerning the gaol liberties, on the authority of the case of Tillman v. Lansing, adjudged in that court in February term, 1809. /
The point discussed ,in the case of Dash v. Van Kleeck, and on which the opinion of the supreme court was given, was as to the effect of the statute of the “28th March, 1809, and the court decided on the question of the retroaction of that statute.
As the court below grounded their opinion in this case on that of Tillman v. Lansing, it may be well to examine what bearing it could have had in that court on the present cause; for the opinions of a tribunal so respectable merit great attention from this court, especially, where acquiescence has constituted them an authority during several years, to the subordinate courts of the state.
The defendant, in the suit in which the ca. sa. issued, had been in the habit of going beyond the liberties on Sundays, and this was known both to the sheriff and his deputy; there was no evidence that the sheriff had retaken him, or that he had voluntarily returned; this, therefore, without regard to the bond given to the sheriff, was clearly a 'voluntary escape, for with full knowledge - of it, the sheriff refrained from exerting his right and performing his duty of recaption, having an opportunity to do so. The escape was, therefore, by connivance and default of'the she *567 ■rifij for which the plaintiff insisted, and the defendant did not deny it, he was bound to respond, unless he, the defendant, was exempted by the statute from answering for a voluntary escape, as his counsel insisted. The court virtually decidedthat the statute did not exempt him, and thus far they decided on the point submitted; but they went on, and gave a construction to the statute incidentally, at large. In strictness, therefore, this judicial opinion was not so broad as it was afterwards laid down in the court below.
In England, though the sheriff is distinguished by being required to be a freeholder of sufficient land in his county to answer the ¡dag and his people, and, of course, in legal intendment, of more ability to respond than other officers from whom such qualification was not exacted, and though liable to answer for all escapes, it was not thought expedient to compel a plaintiff to repose on his solvability only; but the right of recaption of the prisoner on ca. sa., as well as an execution against his estate, was explicitly reserved to the plaintiff by statute; and it is thesame here. This shows that escapes were not intended to be permitted to impair a creditor’s right to a pecuniary satisfaction; and if it could not impair those of the plaintiff, it seems to me to be within the equity of the principle, that the sheriff, in case of a negligent escape, which, notwithstanding the sense of the phrase, may happen in a case in which the utmost vigilance has been exerted, should be protected by "it.
The courts of Westminster-Hall have extended the liberties of their prisons by rules, which they vary, both as to their locality and extent, at discretion; and as long as a prisoner in execution remains within those liberties, no action can be maintained for his escape. Their provisions on the subject' have a strong analogy to ours. By the 8 and 9 Wm. III. c. 27. s. 1. prisoners in execution are required to be detained in the king’s bench or fleet prison, or within the rules of the same, anil the 5th section saves the securities given for the prisoner’s lodging within the rales, and makes them valid.
In an action for an escape from the rales, in the case of Bonafous v. Walker, Marshal of the Marshalsea, (2 Term Rep. 130.) Ashhurst, J. says, “the rales are, to all intents, the same as the. walls of the prison.” Buller, J. says, “ the escape is not volantary, unless it be with the consent or by the default of the marshal; but his allowance of the rules of the prison is no default of him,” because the law has given sanction to if, and it cannot be inferred *568 from Ihence that he consented to the prisoner’s escape, because he took security that the prisoner should not go beyond the rules.
In that case the marshal was a perfectly free agent; he might have granted or withheld, at discretion, the indulgence of the rules; but he granted it at his peril. Here the peril is the same: the only shade of difference between the two cases being, that the sheriff here cannot refuse the liberties to a prisoner who offers him competent security; and it would seem, that in the gradual departure from the rigour of the ancient law, rather the effect of the progress of the human mind than of positive legislation, which subjected the unfortunate and fraudulent debtor, indiscriminately to the restraints of fetters or confinements within the walls of a prison,.at the will of an obdurate keeper, no disposition can be discovered to add to the heavy responsibilities of the sheriff; for though in the reign of George II. the case of Sir ■ William Rich excited an unusual degree of national sympathy and indignation, the statute of 2 Geo. II. c. 22. which was passed immediately after, contains no provision to give relief to prisoners at the expense of the officer. It is, therefore, satisfactorily to be inferred, that the common law provisions were deemed adequate to all the purposes for which they were devised; and there can be no valid reason for an intendment to the prejudice of sheriffs, it being the interest of the republic, and the duty of the court, to interpose a shield for the protection of an officer, who faithfully and cor- . rectly executed the duties required of him by law; and this seems corroborated by the last proviso of the 6th section of the act relative to gaols, that nothing in the said act contained “ shall be construed to exonerate the said sheriff in case any such prisoner shall escape or go at large without the said liberties.” This is a strong intimation that the going without the liberties is to be considered as an ordinary escape from the walls of the gaol, especially as the common law doctrine is not shaken by any express provision of those statutes, which doctrine was wisely calculated, on the one hand, to compel the officers to answer for a wilful or negligent escape, and on the other, to give them every protection essential to the due execution of the duties required from them; and this the ■ statute of the 5th of April, 1810, (sess. 33. c. 187.) as to all cases arising subsequent to its passing, has put completely at rest.
But it has been insisted, that the bond is the price of the liberty of the prisoner. I think not so ; the bond was the price tif his admission from a strailer to a larger place of confinement. *569 not limited by bolts or bars, but by lines, which neither the laws, nor the moral feelings of an honest man, ought to permit him to violate.
The sheriff is compelled to take the security he may misestimate the ability of the bail; their circumstances may ma-= terially change after they have been accepted; they may prove insolvents after the escape; and, most assuredly, the bond, without satisfaction, could not be a fair price of the prisoner’s liberty, for, though the sheriff may be compelled to pay the debt, his indemnity may depend on a precarious or even desperate security.
Suppose the sheriff to recover on his bond, and to prove insolvent, yet he leaves the plaintiff with unimpaired rights against his debtor; he may issue a new execution against the defendant or his estate, for the satisfaction to the sheriff is collateral; it can neither cancel nor diminish the plaintiff’s debt.
Neither positive law, nor necessary implication, have, in my opinion, taken from the sheriff the, to him, most essential corrective of negligent escapes, the power of fresh pursuit and recaption, and his inestimable defence, pleading those circum. stances in bar. The establishment of the liberties is a mere expansion of the gaol, and when a prisoner escapes thence, the sheriff may retake him, prosecute on his bond, and commit him to close custody; for the condition of the bond having been broken, the sheriff is not compellable to expose himself to the risk of subsequent escapes, in consequence of a bond which has been legally forfeited. Whether the bail became liable for the whole penalty, or for the damages sustained by the sheriff, by means of the escape, is not necessary to be brought into view; but whatever1 might have been the recovery, the plaintiff in the court below could dot identify his interest with it; he was not in privity with the parties, and he could have had no possible lien, or the remotest interest in it.
The plea, in this case, of the wrongful escape of EUing'e from the liberties, without the privity or knowledge of the defendant in the court below, and his voluntary return within the limits, before suit brought, and his there remaining in execution, appears to me A good bar to the plaintiff’s action; and, as to the sheriff, that it is as available as if the escape and return had been from and to the walls of the gaol. This construction of the statute could not, in my opinion, defeat, its intent, combining the interests! which a plaintiff is supposed to have in the personal restraint ©f it *570 defendant in execution, with the enlargement of his prison. Iff , the prisoner went beyond the liberties, the sheriff might have prosecuted on the bond, if he sustained any damage by it, or reimprison him within the walls of the gaol. If he neither confined him, nor prosecuted on the bond, his subsequent escapes might; well be considered as voluntary, on the part of the sheriff, and would thus expose him to a recovery against him, of the whole amount of the debt for which the prisoner was confined. This afforded every reasonable security to the creditor, and held out a powerful inducement to the sheriff to exact a rigorous compliance with the condition of the prisoner’s bond.
In the manner in which I have considered this subject, it cannot be necessary to decide on the point determined in the supreme court, in the case of Dash v. Van Kleeck, on the retroaction of the statute of 5th April, 1810; of that statute both parties have attempted to avail themselves; the one contending that it established or declared a new rule, by which this case ought to be governed, as if arising after its passing; the other, that it is an evidence of what the law was before its passing. I decide on this question as if the statute of 1810 was not in existence, as I cannot discover that it has any application.
There are few statutes where the reasons of the legislature can be so satisfactorily ascertained. The highest common law tribunal of original jurisdiction has given an exposition to the statute, relative to gaol liberties, which it was obvious, bore with unusual pressure on the sheriffs and their officers. This excited a general sympathy, and under its influence a correction was promptly applied. Without entering into a consideration of the doctrine of retrospective laws, I have no doubt, if tending to subvert vested rights, that they are inconsistent with the most approved and most salutary principles of substantial justice; but if the evil intended to be remedied by the statute in question did, in fact, exist at the time of its passing, and if the decision in this case should be conformable to its provisions, though not grounded on its authority, it is useless to drag it into the case.
Upon the whole, 1 am of opinion that the judgment of the . court below ought to be reversed.
Platt, Wilkins, and Wendell, Senators, not having heard the argument of the cause, gave no opinion.
*571 All the other members (except one) present, concurring in the epinion of the chancellor, it was thereupon ordered and adjudged that the judgment of the supreme court be reversed, and that the said Benjamin Hilton take nothing by his writ; but that he and his pledges be in mercy, &c. And further, that the said Benjamin Hilton pay to the said Levi Jansen his costs, by him about his defence in the said supreme court expended, to be taxed, and that the record be remitted, &c.
Judgment of reversal.*

 Laws of New-York, v. 1. p. 201.

 v„ Laes of New-York, v. 1 p. 358. 1 Rev. Laws Jones and Varick's cd. 407.

 Laws of 1798, p 485. Lor, & And. ed.

 See infra, Barry v. Mandell.