ALBANY,
Feb. 1827.

Middle District
Bank
v.
Deyo.

---

## THE MIDDLE DISTRICT BANK *against* DEYO, late sheriff of Ulster.

Under a declaration for several escapes,

DEBT for the escape of one *Lawrence*, from the defendant's custody on a *ca. sa.* at the suit of the plaintiff, upon the defendant may plead a voluntary return, &c. to the escapes set forth ; and may, on issue thereon, excuse any and all escapes which the plaintiff proves at the trial, by showing a subsequent voluntary return, &c.

If the plaintiff wishes to confine the defence to any escape, or escapes, in particular, he should new assign.

The day of the escape, or escapes, laid in the declaration, is not material, unless made so by a novel assignment.

Where a plaintiff declares for several escapes, on different days, from a *ca. sa.* upon different judgments, but at the trial proves only one judgment, he is entitled to recover upon only one count.

The usual averment in the plea of a voluntary return, or recaption, to an action for an escape, *that the prisoner continued in custody intermediate the return or recaption, and the suit*, is immaterial ; and no proof of it need be given under an issue upon the plea. *Griffiths* v. *Eyles*, (1 *B. & P.* 413,) and *Chambers* v. *Jones*, (11 *East*, 405,) contra, overruled.

It is a good defence to an action for a negligent escape, that the prisoner was taken on fresh pursuit, or voluntarily returned, before suit brought ; and was in custody at the time of suit brought, without an allegation, that he continued in custody intermediate the recaption or return, and the time of suit brought.

A recaption on fresh pursuit, or voluntary return of a prisoner before suit brought, *per se*, purges an escape ; and a subsequent escape will not revive the right of action for a former one.

A right of action once extinguished, is gone forever ; and cannot be revived or continued by any subsequent, distinct, and independent act.

*Modo et forma* puts in issue matter of substance, only.

a judgment for $652,17 ; tried at the *Ulster* circuit, *April* <span>ALBANY,</span>
19*th*, 1826, before BETTS, late C. Judge.                                <span>Feb. 1827.</span>

The declaration contained three counts, substantially <span>Middle District</span>
alike, except that the escapes were stated on different days. <span>Bank</span>
The defendant pleaded, 1. *Nil debet*, with notice of <span>Deyo.</span>
special matter ; 2. In answer to the first count, a return
before suit brought ; and that the defendant, after that
escape and return, safely kept the prisoner in his custody,
until he went out of office, and then delivered him over
to his successor.   Replication, that the defendant did not
keep and detain the prisoner in his custody, in manner
and form, &c.   The 3d and 4th pleas to the 2d and 3d
counts, and the replications, were similar.   There was al-
so a fifth plea to the whole declaration, alleging that the
judgments, executions, commitments and escapes, stated
in the several counts, were one and the same ; and a re-
turn before suit brought.   Replication, that the escapes
were different, and not one and the same.

At the trial, the plaintiffs proved that *Lawrence* was
arrested upon the *ca. sa. September* 13*th*, 1825 ; that he
was seen off the limits 5 several times prior to the 1*st* of
*January*, 1826 ; and had returned before that day.   The
action was commenced on the 2*d* of *January*, 1826 ; on
which day, it was admitted, that the defendant, in due
form of law, assigned the prisoner to his successor.   It
appeared that the prisoner was on the limits when the *ca-
pias ad respondendum* in this cause was delivered to the
coroner.

The plaintiffs offered to prove that *Lawrence* had given
bail for the limits, and deposited $800 as security ; and
that this suit was defended at his expense.   The judge
rejected the evidence ; but charged the jury, that as it
was alleged by the defendant, that the prisoner continued
in his custody after voluntary return, if the plaintiffs had
satisfactorily proved that after the escapes stated in the
1st and 2d counts, and the voluntary return of the prisoner,
he had again made other escapes, the plaintiffs were en-
titled to a verdict.   The jury found a verdict for the
plaintiffs on each of the issues.

*Talcott,* (attorney general,) for the defendant, now moved for a new trial, on the ground that the charge of the judge was incorrect, and that the defendant was entitled to a verdict upon the evidence. He said the plaintiff was not entitled to recover on the two first counts. There was but one judgment upon which the prisoner was committed.

The allegation, that the defendant detained the prisoner, till he was turned over to his successor, was unnecessary. The return was an answer to the escape ; and if the plaintiffs relied on a subsequent escape, they should have new assigned. The defendant is bound to answer no escapes beside those contained in the declaration. No subsequent escape could revive a right of action on the first. This was purged by the return ; and if the plaintiffs had intended to avail themselves of the second, they should have brought their action for that. The cases and precedents are numerous that a recaption on fresh suit, or a voluntary return, are a defence, *per se,* without adding that the prisoner was detained. (7 *John.* 177. 4 *id.* 47. 10 *id.* 578. 6 *id.* 123. 16 *id.* 313. 2 *John. Cas.* 208. *Com. Rep.* 554. *Cro. Eliz.* 439. *Latch,* 200. *Noy,* 93. *Godb.* 177, 433. *Browne's Ent.* 159. 5 *Instr. Cler.* 123. 2 *T. R.* 126. 1 *Str.* 423. 6 *Cowen,* 65.)

He examined *Chambers* v. *Jones,* (11 *East,* 406 ;) and contended that it is not law, and not supported by the authorities there relied upon. But if law in *England,* it is not so here. The sheriff is, with us, bound to let the defendant to bail upon the limits, which sometimes cover a whole city. This is not so in *England.* It is impossible for him here to know and plead all the escapes of a prisoner to an action for one. Such a doctrine would subject him to the payment of every *ca. sa.* upon which his prisoners are committed.

The allegation of detention, being wholly immaterial, is not put in issue. *Modo et forma* extends only to substance.

*C. H. Ruggles,* contra, relied on *Chambers* v. *Jones,* (11 *East,* 406,) as in point for the plaintiff. He also cited

5 *Wentw.* 228, 229, 242 ; 2 *John. Cas.* 208 ; 6 *John. Rep.* 123 ; 10 *id.* 561 ; 2 *id.* 433 ; *Griffiths* v. *Eyles*, 1 *B. & P.* 413, 418, *per Eyre, Ch. J.*

ALBANY,
Feb. 1827.

Middle District
Bank
v.
Deyo.

*Curia, per* WOODWORTH, J. It is very clear that the plaintiffs are not entitled to recover upon more than one count. There was only one judgment on which the prisoner was committed.

The important inquiry is, whether all the facts stated in the plea, were material ? If they were, the plaintiffs ought to recover. But if the defence was complete on proving a voluntary return before suit brought, and that the prisoner was in custody when the action was commenced, the verdict ought to have been for the defendant.

The decision of this question will depend on the inquiry, whether the allegation that the defendant detained the prisoner in custody upon the voluntary return, until he was handed over to the new sheriff, was, or was not material. If immaterial, then it was not put in issue by the replication ; (*modo et forma* only putting in issue matter of substance ;) and, consequently, need not be proved.

On the argument of this cause, great reliance was placed upon the cases of *Griffiths* v. *Eyles*, (1 *B. & P.* 413,) and *Chambers* v. *Jones*, (11 *East*, 406.) If these cases were correctly decided, I admit that the law, as understood in *England*, is in favor of the plaintiffs.

With great deference for the learned opinions of the judges who then presided, I cannot yield my assent to the doctrine there advanced ; believing it to be repugnant to the principles of the common law, and the weight of authority deducible from the decisions of their learned predecessors. Before I consider the two cases referred to, I will examine the doctrine as laid down in other authorities. The 2 *Bac. Abr.* 529, *tit. Execution*, lays down the rule, that if a prisoner in execution escape, without the assent of the sheriff, and he make fresh pursuit, and retake him before any action brought, it shall excuse the sheriff ; and that a voluntary return of the prisoner, before action, is equal to a re-taking on fresh pursuit. The prop-

osition is not qualified, and seems to be a full answer to the escape. There is no suggestion, that a continuance in custody until suit brought, enters at all into the nature of the defence ; and from the reason of the thing, if the plaintiffs relied upon a subsequent escape, they should have new assigned. The defendant is not bound to do more than give an answer to the escapes in the declaration. This he has done by excusing as many as are there alleged. If the first escape is purged, how can a subsequent one revive the right of action ? There is a complete defence to the action for the first escape, by the voluntary return. It is against established principles, to say that a right of action, once extinguished, can be restored by a subsequent disconnected and independent act. The day laid in the declaration is immaterial. Proof of an escape on a different day is admissible. How then can the plaintiffs, on these pleadings, raise the objection, that the escape in issue between the parties is the first escape, and that the defendant's plea must have reference to that? I think it may equally well apply to the last escape ; and then, by the plaintiffs' own shewing, the prisoner returned and remained in custody until he was assigned. If the day alleged be not material, the defendant cannot be precluded from applying his plea to such escape as he thinks proper. In that case, he may answer to the last escape proved, that the prisoner returned. This latitude is given to the defendant under the pleadings ; which the plaintiffs might have restricted in their replication, by alleging in certain the identical escape on which they relied ; and thereby confining the plea of the defendant to such escape. I do not intend, however, to rest my opinion on that ground ; but on the sufficiency of a return before action commenced ; and that the prisoner was, at the time, in custody.

In Sir *Ralph Bovy's* case, (1 *Ventr.* 217, 24 *Car.* 2,) the action was debt for a voluntary escape. The defendant, protesting that he did not let him voluntarily escape, pleaded, that he took him upon fresh pursuit. The plaintiff demurred, because he did not traverse the voluntary escape ; and resolved for the defendant ; for it is not ne-

cessary for the plaintiff to allege it in his declaration. It must be alleged in the replication. This case is approved in 10 *Vin.* 118, *pl.* 43, and 1 *Lutw.* 382, (3 *Keb.* 55, *S. C.*) Here there was no averment, that after the re-taking, the prisoner was kept in custody until suit brought; nor was it suggested by the court or counsel. So also in *Harvey* v. *Reynel*, (*W. Jon.* 144, *Car.* 2,) the declaration alleged an escape at *D.* in the county of *H.* The defendant confessed that the prisoner was committed in the county of *S.*, and escaped; and that the defendant made fresh pursuit, and re-took him before suit, and that he was in his custody; and demanded judgment. It was resolved on demurrer, that although the plaintiff alleged the escape at *D.*, and the defendant confessed it at *S.*, in another county, this was good, without a traverse of the escape at *D.*; for when a man is at large, it is an escape in every county. In *Whiting* v. *Reynel*, (*Cro. Jac.* 657,) the plea was, that the defendant had re-taken the prisoner, and yet hath him. No objection was taken to the plea, on the ground that it did not allege a continuance in custody after recaption. There might have been ten escapes and recaptions after the first; and yet, after the tenth, the prisoner was in lawful custody, which supported the averment in the plea. In *Chambers* v. *Jones*, (11 *East*, 408,) lord *Ellenborough*, after laying down the proposition that the plea must allege a continued detention to the time of action, refers, among others, to the case of *Whiting* v. *Reynel*, to support his doctrine. I apprehend it does not. So far from it, the detention averred, is an existing one when the action was commenced; which would be equally true, whether one or two escapes and returns had taken place between that time and the recaption or return, on the first escape made by the prisoner. The plea neither affirms nor denies a continued detention; and, manifestly, because, at that day, it was not deemed material. The case of *Chambers* v. *Gambier*, (*Com. Rep.* 554,) was also cited. There, in debt for an escape, the defendant pleaded, that, before action brought, the prisoner returned, and was in execution, for the damages on the judgment. On de-

murrer, judgment was given for the defendant, on the ground that this was equal to a re-taking on fresh pursuit. If a continued detention was necessary to be averred, it seems to me judgment should have been given for the plaintiff. This form of pleading is in accordance with the principle laid down, that a voluntary return excuses the sheriff: but it cannot be so, if the defendant is bound to show the continuance of the detention. He is not protected by proving a recaption or return, if the law be as contended for by the plaintiffs. The averment, then, that the prisoner was in custody when the suit was commenced, must be made; and that is all that is necessary after setting out the recaption or return. A detention at the time is indispensable; for unless the fact be so, the sheriff is clearly liable. In an anonymous case, (1 *Str.* 423,) it was held that if a man escapes and returns, and afterwards commits a second escape, he cannot be taken up for the first escape, it being purged by the return. Ld. *Ellenborough* considered the case of *Meriton* v. *Briggs*, (1 *Ld. Raym.* 39,) as an unequivocal case, to prove that a recaption was no protection to the sheriff, nor any answer to the action, unless there was a subsequent detention to the time of the action. The case was this: the defendant pleaded a recaption on fresh pursuit merely: the plaintiff replied, *de injuria sua propria, obsque hoc quod* he retook, &c. upon fresh pursuit, *et adhuc detinet.* The defendant demurred for that the plaintiff had traversed matter not alleged in the plea, viz. *quod adhuc detinet;* and contended that if the defendant had suffered the prisoner to escape a month after the recaption, yet the plaintiff should be bound by the recaption for the old escape; and should have a new action for the new escape, which *Holt*, Ch. J. denied; for both are but one escape. Judgment for the plaintiff. If I understand this case, the point before the court was a distinct question from the one before us. It was this: does a plea of recaption, or voluntary return, imply that the prisoner was in custody at the time of action; for it will be seen that the only part of the traverse that relates to the detention, is as to *et adhuc de-*

*tinet ;* that is to say, whether he was then a prisoner ; not that, at no time since the recaption, had he ceased to be a prisoner. Viewed in this light, it corresponds with all the cases I have referred to. The language of *Holt*, therefore, so far as it attempts to lay down law not applicable to the point then in issue, must be regarded as an *obiter dictum ;* and is directly opposed to the case in *Strange.*

It is true, that in some of the books of precedents, the form of the plea is that of a continued detention to the time of action. Such are the pleas in 5 *Wentworth*, 228, 241, and *Lil. Ent.* 152. Indeed, the form of the plea in modern times, I apprehend, generally contains that allegation. But, as far as I know, it has been the sense of the profession, that the plea was supported, if the prisoner was actually in custody when the suit was commenced, provided the sheriff had not suffered a voluntary escape ; and that the fact of the prisoner having escaped several times previously, and returned, did not invalidate the allegation of having remained a true prisoner. If the retaking, or return, purges the escape, it is the same as if no escape had taken place.

I have not been able to discover any adjudged cases previous to *Griffiths* v. *Eyles*, and *Chambers* v. *Jones*, that support the doctrine contended for by the plaintiffs, or seem to sanction it, except the case containing the dictum of Ld. *Holt*, which has been noticed. In *Chambers* v. *Jones*, it appears to me, the court principally rely on forms of pleas to be found in the books.

That the law was understood in *England* to be as I have attempted to show, is very evident from the case of *Bonafous* v. *Walker*, (2 *T. R.* 126.) The first count was for a voluntary escape ; the second for a negligent escape. Pleas, 1. *Nil debet :* 2. As to the second count, recaption on fresh pursuit ; and that the defendant had and detained the prisoner in execution for the damages : 3. As to the second count, that the prisoner returned ; and continually after return, that the prisoner had been detained in execution. Replication, that the defendant did not diligently pursue the prisoner in order to retake him : and as to the

third plea, that the prisoner was not continually, after his return, detained in the defendant's custody in execution. Here the last issue was substantially the same as in the case under consideration.    At the trial before *Buller*, J. it appeared that the prisoner was out of the rules of the prison on three several days.    On the defendant's hearing that the prisoner had escaped, he was put into close custody, before action brought.    The defendant made two objections, 1. That the plaintiff ought to have brought the action as administratrix, because the judgment was obtained in that character, 2. That the plaintiff could not give a negligent escape in evidence under the first count.    The judge overruled both objections; and a verdict passed for the plaintiff.    On motion for a new trial, *Erskine, arguendo*, contended, that, as the defendant could not plead a recaption to the first count for a voluntary escape, the plaintiff could not give in evidence a negligent escape under that count; and, therefore, it must be considered as if there was but one count for a negligent escape; in which case the defendant was entitled to a verdict.    He insisted that the number of escapes could not vary the question, as the prisoner was in safe custody before the commencement of the action.    It appears, then, that this question was distinctly presented; it was not contradicted by the opposing counsel, nor denied by the court.    On the contrary, they must have considered it sound; otherwise, there was no necessity for granting a new trial on the ground stated.    *Buller*, J. observes, that, at the trial, the law was mistaken by both parties, and by himself; the plaintiff contending that it was a voluntary escape, which was denied by the defendant; both of them going on the mistaken idea, that a voluntary escape was material to be proved on the first issue.    The court, therefore, interposed, and granted a new trial, with liberty to amend the pleadings.    As the case stood, three escapes were proved. The defence was considered complete as to the second count; but inasmuch as the plaintiff had proved another negligent escape, which he might do under the first count, to which there was no plea of recaption or voluntary re-

turn, he was, under the pleadings, entitled to a verdict.
But if the doctrine contended for be correct, the plaintiff
had falsified the plea in a material part, by showing that
the prisoner had not been, continually, after the return,
detained in execution.   Three escapes were proved; so
that without reference to the first count, the plaintiff made
out a right to recover on the second.   It cannot be ima-
gined that at that day, 1787, the court of king's bench
considered the doctrine now advanced, as law ; and espe-
cially, that if such had been the law, it should escape the
notice of *Buller*, J., who is not only admitted to have been
among the ablest lawyers, but ranked among the most
skilful special pleaders of his time.

The case of *Griffiths* v. *Eyles*, (1 *B. & P.* 413,) is the
first case I have met with that seems to be at variance
with the law, as understood in *Bonafous* v. *Walker.*
When the case in *B. & P.* was decided, 1799, *Buller* was
a justice of the common pleas, having resigned his seat in
the king's bench ; but he was not a party to the decision
of *Griffiths* v. *Eyles*, (*April 30th*, 1799,) having been ab-
sent from the 20*th* of *April*, to the end of the term, (*May*
6*th*,) from indisposition.   *Heath*, J. was also absent ; so
that the law as there laid down, was by two judges only.
I make this remark, as somewhat impairing the weight of
that case, inasmuch as there is no reason to believe that
judge *Buller* had changed his opinion since the case of
*Bonafous* v. *Walker ;* or that had he been present, he
would have concurred in the decision in *Griffiths* v. *Eyles.*
In this last case, the action was debt for an escape.   The
defendant pleaded a negligent escape and voluntary return,
since which the prisoner had been safely kept.   The re-
plication admitted the escape and return ; but alleged
the prisoner had not been safely kept since that time, hav-
ing again escaped, which was a different escape from that
alleged in the plea.   The defendant, in his rejoinder,
traversed the allegation that the prisoner had not been
safely kept ; and then pleaded to the latter part of the re-
plication, a negligent escape, voluntary return, and safe
keeping since, in the same manner as in the plea.   The

ALBANY,
Feb. 1827.

Middle District
Bank
v.
Deyo.

court held the latter part of the rejoinder bad on special demurrer. *Eyre*, C. J. considered that the common form of replication stopped at the allegation that the prisoner had not been kept in custody since the first voluntary return; and that the latter part of the replication, in that case, was only an amplification of the denial that the defendant had kept the prisoner in safe custody. He observes, " the defendant, by his plea, excuses an escape, upon the ground of the prisoner having returned, and remained in custody ever since. Now put the case that the prisoner had made two or three escapes, and had returned as many times ; the defendant was bound to state them all, in order to establish the averment, that the prisoner had been kept in safe custody ever since."

If this case is to be followed, our decision should be for the plaintiffs; but I consider it a departure from the principles recognized in *Bonafous* v. *Walker*, which seem to be founded on the established doctrine, that a voluntary return or recaption on fresh pursuit, are, *per se*, a sufficient answer to an action for an escape ; and being, of themselves sufficient, it follows that the farther allegation, that the prisoner has ever since continued in custody, is immaterial. If it be material, then, indeed, the defendant would, in order to protect himself, be bound at his peril, to set out all the escapes, if there were more than one ; and give an answer to each, although the plaintiff had declared for only one escape in his declaration. The peculiar hardship of such a doctrine is not more manifest to my mind than this anomaly in the law, that a defendant is bound to answer more than is charged ; to protect himself by plea against causes of action which the plaintiff may, but has not alleged. Nor is it less difficult to support this doctrine, by putting it on the ground that the first escape, although purged, may be revived, and continue a good cause of action, by reason of subsequent escapes, with which there is no necessary connexion. *Eyre*, C. J. places the reason of this doctrine on the ground that the sheriff knows, or is bound to know, the state of his prison ; and whether there has been one escape or ten escapes;

However that may be in *England,* where the sheriff may, or may not, allow the rules of the prison; and where these rules, when allowed, are not analagous to the limits prescribed by statute for our prisons; it may be observed, that here, the allowance of the limits is imperative on the the sheriff upon giving security. Those limits are extensive; so that it cannot be presumed that the sheriff is able to state the number of escapes committed by a prisoner. Therefore, to apply the principle here, and say that the sheriff shall state all the escapes, would be, in most cases, the same thing as to say he should be liable for the debt, where several escapes had been committed, although, in each case, the prisoner had voluntarily returned. If the sheriff had discovered that his prisoner had escaped ten times, and returned, he would plead those returns, but the plaintiff who proved the eleventh escape, would recover; because, as to that, the defendant being ignorant that it had been made, had no means of protecting himself. Besides the unreasonableness of the doctrine, and unsupported, as I think it is, by the weight of authority even in the *English* courts, it is apparent that there is no necessity to adopt it for the purposes of justice.

If the prisoner is in custody when the suit is commenced, that is an answer to every claim on the ground of a subsequent escape. Why subject the sheriff for escapes which have been previously committed, and are necessarily purged by the fact that the prisoner is in actual custody when the suit is commenced.

If the plaintiffs relied on a subsequent escape, they should have new assigned; for the defendant is not bound to do more than give an answer to the escape or escapes in the declaration; which is done by excusing as many as are there alleged. In *Chambers* v. *Jones,* Ld. *Ellenborough* admits that a new assignment would be necessary, if it be not necessary to state a detention down to the period when the suit is commenced. The court of king's bench held that the new assignment was unnecessary, deciding that it was essential to state a detention; and shew that it either continued when the action was commenced, or that

something had intervened to put a legal termination to it ; and as the evidence negatived such a detention in that case, the verdict was right. I have endeavored to shew that the cases and precedents relied on by the court, do not go the length of supporting that opinion.

I will, in the next place, briefly examine some of the decisions in our own courts, which go fully to support the view I have taken. And here I must observe that I have never known an action even hazarded, for a negligent escape, after the prisoner had actually returned into custody. The question now raised, appears to me novel ; and but for the cases of *Griffiths* v. *Eyles* and *Chambers* v. *Jones*, it may well be doubted whether an experiment like the present would have been made.

In the case of *Dole* v. *Moulton*, (2 *John. Cas.* 208,) the action was on the bond given to the sheriff. The plea averred the return before action ; and that the prisoner continued in custody after the return. No question was raised as to a subsequent escape. The court held that the return of the prisoner saved the condition of the bond ; and was a competent defence on the part of the sheriff.

In *Currie & Whitney* v. *Henry*, (2 *John. Rep.* 433,) one plea alleged an escape and voluntary return ; and that the prisoner continued in custody, until afterwards he was discharged out of prison by the court of common pleas of the county of *Rensselaer*, pursuant to the act for the relief of debtors, &c. The plaintiff demurred specially ; and contended that the plea was double. The court held the plea good. *Spencer*, J. observed, " the defendant could not have pleaded the involuntary escape and return before action brought, without also alleging *that the prisoner was*, at the time of the plea pleaded, in his custody. This is manifest from all the precedents." This case was cited by the plaintiffs' counsel ; but is an authority against the doctrine they contend for. It accords with the view I have taken, viz. that the plea *must shew* a recaption or return, and that the prisoner is in custody ; not that he has continued in custody from the time of return to the time of action. The court understood the precedents to

require that, and no more.   It has been shown that so are
the pleas in all the old cases, and in several of those cited
by Ld. *Ellenborough.*   This court, in *Currie & Whit-*
*ney* v. *Henry*, did not understand that such a plea implied
a continued detention from the time of voluntary return,
as the court of king's bench in the last case did.   And
therein consisted a difference of opinion on a material
point.

In *Tillman* v. *Lansing*, (4 *John.* 47,) the court lay
down the law in an unqualified manner : "It is not to be
denied, that fresh suit and recaption is a good defence
against a negligent escape ; and a voluntary return before
suit brought, will also purge an escape of this descrip-
tion." So also in *Peters & Gedney* v. *Henry*, (6 *John.*
123,) the court say, "a voluntary return before action
purges the escape." (7 *John.* 177, and 10 *John.* 549,
563, *S. P.*)   In the case of *Richmond* v. *Tallmadge and
others*, (16 *John.* 307,) in error, this question seems to
have been put at rest.   The chancellor, in delivering the
opinion of the court, says, "the case is then reduced to
this point : whether, to an action of escape, a plea of a
voluntary return by the prisoner within the limits before
suit brought, and that plea certified by the jury to be true
in point of fact, be not a valid defence ? Under the decis-
ions of this court, there can be no doubt of the validity of
suchadef ence."

It follows as a necessary consequence, if this is a valid
defence, (accompanied with the fact which is always un-
derstood as connected with it, the prisoner being in custo-
dy at the time of suit brought,) that the plea, in this case,
was perfect, without averring a continued intermediate de-
tention ; and although averred, it is surplusage, and imma-
terial.   Taking an issue upon that part, makes an imma-
terial issue, and requires no proof by the defendant, to
sustain it ; neither can it avail the plaintiff, to prove it un-
true.   A subsequent escape was a distinct cause of action,
not connected with the first escape, and no ground for
reviving after it had been purged by a voluntary return.

On these grounds, without enquiring whether the de-
fendant might not protect himself under the notice. I am

of opinion that the defendant has answered the escapes set out in the declaration, by showing a return of the prisoner, and that he was in custody at the time the suit was commenced.

There must be a new trial, with costs to abide the event of the suit.

New trial granted.