## BUTLER *v.* WASHBURN.

25 | 251
70 | 298
---
25 | 251
71 | 86

By the Revised Statutes, chap. 34, § 2, it is provided that a majority of the selectmen of a town shall be competent to act in all cases. Accordingly, where the selectmen of a town were empowered to appoint a collector of taxes, and the appointment was made by a majority of them,—*Held*, that the appointment was valid. *Held, also,* that a warrant and tax bill, signed by a majority of a board of selectmen, would be good; and that a collector's bond, approved by a majority, would also be good.

In the collection of taxes upon a warrant, a collector may distrain property, or, for the want of goods and chattels whereon to make distress, may take the body; but having taken the body for the tax, he cannot afterwards distrain property.

After a voluntary escape, if the party is in custody on final process, he cannot be retaken. But after a negligent escape, the officer may retake him.

An officer may allow reasonable liberties to a debtor in custody, and, as between him and the debtor, the latter cannot complain, provided there be no abandonment of the arrest.

After an arrest which requires the prisoner to be committed, it is the duty of the officer to take the prisoner to jail as soon as he reasonably can. He is to judge of the hour at which he will start, and of the propriety of starting on account of the state of the weather, and of the personal restraint necessary to secure the prisoner. And he is not liable to the prisoner for any injury he may receive thereby, unless he needlessly exposes the prisoner's health, or does him an unnecessary personal injury.

TRESPASS, for an assault and battery and false imprisonment. Plea, the general issue, accompanied by a brief statement, setting forth that at the time of the alleged trespass, the defendant was collector of taxes of the town of Pittsburg, and that whatever was done by him was done as such collector, in endeavoring to collect a tax of the plaintiff.

Among other evidence introduced upon the trial, it appeared that the town at their annual meeting, in March, 1848, neglected to choose a collector, and voted that the selectmen appoint one; that the selectmen for that year accordingly consulted together, and all agreed that the defendant should be appointed; that an appointment was thereupon made out, and signed by two of the select-

Butler *v.* Washburn.

men. The plaintiff excepted to the sufficiency of the appointment, because only two of the selectmen signed it. The court overruled the exception.

The warrant and tax bill appeared to bear the signatures of all three of the selectmen, but one of them testified that his name was affixed to the papers by his son, he having stood by and directed him to do it. For that reason, the plaintiff excepted to the sufficiency of the warrant and tax bill, but the exception was overruled.

It appeared that the defendant was appointed collector of the town by the selectmen on the 10th of May, 1848. On the back of his official bond is the following indorsement: "Pittsburg, May 10th, 1848. This certifies that we are acquainted with the sureties named in the within bond, and believe that they are able and sufficient to respond to the penalty thereof." The certificate was signed by two of the selectmen, with their official designation. The bond and approval were duly recorded by the town clerk of the town, but it did not appear at what time it was filed or recorded. The plaintiff excepted that there was no sufficient proof that the bond was ever accepted by the town or the selectmen, and that there was no proof that the bond was given to the acceptance of the town or selectmen within six days of the defendant's appointment. The exceptions were not sustained.

The warrant and tax bill or list were both dated on the same 10th of May, 1848. They were subsequently delivered to the defendant, who, in September following, duly notified the plaintiff of his tax, which was on said list. It appeared that the defendant, at the time of giving the notice, had the warrant and list in his hands, and that the plaintiff said he should not pay his tax, for he did not believe the selectmen had any right to tax him in that town. The tax was a poll-tax merely. The arrest complained of was made the 8th or 9th of November, 1848. There was no evidence that the warrant or list was ever out of the pos-

Butler *v.* Washburn.

session of the defendant, and he produced them on the trial. The plaintiff took the exception that there was no proof that the warrant or tax bill, produced on the trial, were in the defendant's hands, or that he acted under them in making the arrest. The exception was overruled.

Up to the time of the plaintiff's arrest, it did not appear that he had any property whatever. He was arrested on the 8th of November, 1848, and at that time desired the defendant to give him his liberty until the next day, and offered to put into the hands of the defendant a watch, as a pledge for his appearance at the house of one Aldrich. The defendant accepted the watch as such pledge, and the plaintiff had his liberty accordingly. On the next day, November 9th, the defendant went to the house at the time agreed upon, and the plaintiff then said he was ready to go to jail, and demanded the watch according to the terms of the agreement. The defendant gave up the watch as he had agreed to do, and said he would get ready to go to the jail as soon as he could; that he had got to get oats for his horse. The defendant lived from one to two miles from Aldrich's. The plaintiff and defendant separated soon after, but upon what terms or agreement, and in what way, did not distinctly appear. This was in the course of the forenoon. Not long after, the plaintiff was seen riding away on a horse, and passing by the defendant's mill, where the defendant was rolling logs. The defendant called out to him, and told him not to go away, as he should want him soon to go to Lancaster. The jail was at Lancaster. The plaintiff gave no heed to what the defendant said, but pursued his course; and it did not appear where he went, or for what purpose. He was not seen again till the first of the evening. The defendant, then being in pursuit of him, was at the house of said Aldrich, and while there the plaintiff came in. The defendant then asked him if he was ready to go to jail, and he said " no." The defendant told him he must go or pay his taxes. He said he would not go that night, and would not

pay his taxes. Some one advised him to pay them, but he said he would not. The defendant then said that he should go, if there were men enough to carry him, and called assistance. The defendant took him by the collar, and a scuffle ensued. It did not appear, however, that the plaintiff was in any way injured, but the evidence tended to show that the defendant's head was injured, but whether by a blow given by the plaintiff or not, did not appear. The defendant said that the plaintiff struck him, and the plaintiff said he did not. The plaintiff was taken across the road to the house of one Bundy, where the defendant put the plaintiff under keepers, and ordered him some supper, and started for his horse. The supper was got, and eaten by the plaintiff, and the defendant paid for it. The defendant came with his horse and brought with him a strap; also a thick frock, lined and wadded. He put the frock upon the plaintiff, and then confined his arms with a strap, but not in such a manner as to prevent a tolerably free use of them. He also provided him with mittens. The night was cold for the time of year. They started for Lancaster between ten and eleven o'clock. It did not appear whether they travelled all night or not, or how far they went before stopping. After having proceeded about forty miles towards Lancaster, the plaintiff turned out said watch to the defendant, in pledge for the payment of said taxes and costs, and he was discharged.

There was evidence tending to show that the plaintiff received no personal injury whatever; but on his return, being asked what kind of a time he had, he laughingly replied, " a first rate time."

The counsel for the plaintiff requested the court to charge the jury as follows :

" First, that Butler, having turned out a watch to the defendant on the first day, he should have distrained the watch, and not have arrested his body.

Second, that if the defendant went about his own work and business, after taking the plaintiff into custody, and

neglected to keep him in custody, and did not make prepation to take the plaintiff to jail, that this would be an abandonment of the arrest, and that the defendant could not afterwards arrest him for the same tax.

Third, that the defendant had no authority to bind the plaintiff's arms behind him, out of spite or ill will, nor unless necessary.

Fourth, that the defendant would be liable for an abuse of the plaintiff, although he might have inflicted no personal injury.

Fifth, that the defendant had no right to start with the plaintiff to carry him to jail, a distance of about fifty miles, between the hours of ten and eleven o'clock in the evening, and compel him to travel all night, in severe weather, without some urgent necessity."

The court did not charge the jury in those terms, but instructed them that the watch being put into the defendant's hands on the first day as security for the plaintiff's appearance after his arrest, he was not obliged to distrain upon the watch, but acted properly in giving it up according to the terms of the agreement. That after the watch was given up and the plaintiff surrendered himself at Aldrich's, it was the duty of the defendant to get ready to take him to jail as soon as he could conveniently, but that if he did not, and went about his other business without the request for delay by the plaintiff, or if he voluntarily let him go, or abandoned him, he could not retake him afterwards, and would be liable for all that followed. That if from the conduct of the plaintiff the defendant had any reason to apprehend that the plaintiff would endeavor to escape, he had a right to put the strap upon his arms, but it should be so done as not to inflict any injury or suffering upon the plaintiff. That the defendant had the right to start in the evening, at the time when he did, provided that in so doing he did not expose the health of the plaintiff, or cause him any personal injury.

To these instructions the plaintiff's counsel excepted.

The jury returned a verdict for the defendant, and the plaintiff moved to set the same aside, and for a new trial, for alleged error in the rulings and instructions of the court.

*Flint*, for the plaintiff.

*Burns*, *Fletcher*, and *Heywood*, for the defendant.

EASTMAN, J. The first three exceptions taken in this case are substantially settled by the Revised Statutes. By chap. 1, sec. 13, it is enacted that all words purporting to give a joint authority to three or more public officers, shall be construed as giving such authority to a majority of them, unless otherwise expressly declared. And by § 2, chap. 34, it is provided that a majority of the selectmen shall be competent to act in all cases.

The appointment of the collector was therefore legally signed, as were also the warrant and tax bill; and the bond was approved by sufficient authority. Two of the selectmen were clearly competent to perform all of these duties.

Independent of the statute, the appointment would be good upon common law principles. All of the selectmen consulted together, and agreed that the defendant should be appointed; and after such consultation it was sufficient that the appointment be signed by two only. And with the warrant and tax bill also, were it necessary that they be signed by the three, the signature of the selectman, affixed by his son in his presence, and by his direction, was a good execution. Under such circumstances, it was as much his act as if written by his own hand.

The certificate of approval upon the back of the bond purports to have been made on the day of the appointment. The town or selectmen could accept the bond. Rev. Stat. chap. 36, § 4. And this certificate is a sufficient acceptance by the selectmen, and is *prima facie* evidence, at least, of

Butler *v.* Washburn.

its having been accepted within six days of the defendant's appointment.

The exception that there was no proof that the warrant or tax bill were in the defendant's hands, or that he acted under them in making the arrest, is controverted by the facts stated in the case. In September previous to the arrest, when the defendant notified the plaintiff of his tax, they were in his hands, and they are to be presumed to continue there—that being their proper place, and he having the proper custody of them—until some evidence is offered to show the fact to be otherwise.

The other exceptions raised by the case apply to the request made for instructions to the jury, and the course taken by the court thereon.

The first instruction asked for was, that Butler, having turned out a watch to the defendant on the first day, the defendant should have distrained the watch, and not have arrested his body. But it is to be observed that the arrest was made before the watch was offered. The case finds that it did not appear that the plaintiff had any property whatever; and if the collector could find no property on which to make distress, he clearly had the right to make the arrest. For want of goods and chattels whereon to make distress, the collector may take the body of any person neglecting or refusing to pay the tax assessed against him, and commit him to the common jail. Rev. Stat. chap. 45, § 8. Having made the arrest, he had no power to distrain the property, even had the watch been turned out. *Brinley* v. *Allen*, 3 Mass. Rep. 561 ; 1 Cowen's Rep. 56 ; *Sunderland* v. *Loder*, 5 Wendell's Rep. 58.

But the watch was not turned out to be distrained upon. It was offered to the defendant, and accepted by him, as a pledge for the appearance of the plaintiff the next day at the house of Aldrich, after the arrest had been made. The request to charge the jury upon this point was rightly declined.

The second instruction desired was not called for upon the facts stated; and the instructions given by the court in regard to the matter were sufficiently favorable to the plaintiff.

An arrest upon a warrant for the collection of taxes, is in the nature of an arrest at common law upon final process. An arrest is usually made by taking the person into actual custody. The common practice is to put the hand upon the individual, and any touching, however slight, is enough. *Genner* v. *Sparks*, 1 Salk. Rep. 79; *S. C.* 6 Mod. Rep. 173. But no manual touching of the body, or actual force, is necessary to constitute an arrest, if the party be within the power of the officer and submits to the arrest. *Horner* v. *Batten*, Bul. N. P. 62; *Gold* v. *Bissell*, 1 Wendell's Rep. 210; *Pike* v. *Hanson*, 9 N. H. Rep. 491.

An escape is either negligent or voluntary; negligent, where the party escapes without the consent of the officer; voluntary, where the officer permits him to go at large. After a voluntary escape, if the party was in custody on a writ of execution, he cannot be retaken; and the officer would be liable to an action for false imprisonment if he retook him. 2 Johns. Cases 3; 1 Saund. 35; 5 Term Rep. 25. And if the creditor assent that his debtor be discharged, he cannot be again arrested, but the debt is discharged. *Powers* v. *Wilson*, 7 Cowen's Rep. 276; *Little* v. *N. P. Bank*, 14 Mass. Rep. 443; *Poucher* v. *Holley*, 3 Wendell's Rep. 184; *Tanner* v. *Hayne*, 7 D. & E. 420; *Gould* v. *Gould*, 4 N. H. Rep. 174.

After a negligent escape, the officer may in all cases retake the party. 1 Saund. 35; 6 Mod. Rep. 231; 9 Petersd. Abr. 87, 88. Or if the defendant voluntarily return before suit, it is equivalent to a recaption on fresh pursuit. 5 Johns. Rep. 89; 7 Johns. 175, 178; 6 Cowen's Rep. 732.

It is quite questionable whether the evidence in this case would have warranted the jury in finding that there had been a voluntary escape, or any abandonment of the arrest,

Butler *v.* Washburn.

But the question was submitted to the jury, and they have negatived the fact by their verdict. If there was any escape, it was a negligent one, and such as would justify a recaption, or such as would be cured by a voluntary surrender. It is evident that the defendant never intended to discharge the plaintiff from the arrest, till he was discharged on their way to Lancaster. It is a mistake to suppose that an officer is bound, in order to retain his arrest, to keep his hands upon a prisoner, or to secure him, either by cords or keepers. An officer may allow reasonable liberties, and as between him and the debtor, the latter cannot complain. He may complain that the officer has detained him in custody longer than he had a right to do before committing him; but not of liberties which he requests, or to which he assents, provided there be no abandonment of the arrest. A creditor may complain of improper indulgences granted, but not so with the debtor. There was here no escape such as the plaintiff could take advantage of.

Neither was there any thing improper or illegal in the conduct of the defendant after the plaintiff surrendered himself at Aldrich's. He informed the plaintiff that he would get ready as soon as he could; that he had got to get oats for his horse; and to this the plaintiff made no objection. The distance from the place of arrest to the jail was such as to require some preparation for the journey, and the defendant was entitled to a reasonable time to make the preparations. Nothing shows that he was not ready in a reasonable time, or that the plaintiff made any complaint of the delay.

The third request was equally untenable. There was nothing in the evidence showing spite or ill will. An officer, in executing final process upon the body, is bound to commit the prisoner, if not restrained by legal proceedings, or the tendering of bonds as provided by statute, and he has a perfect right to use all proper and necessary means to secure him and lodge him in jail; and to do this he may

call to his aid the *posse comitatus* of the county, if found necessary. After the plaintiff had shown such feelings, and had conducted in the manner set forth in the case, the defendant was perfectly right in using the straps and confining his arms. It was necessary for his own protection and the due execution of his process.

We discover nothing in the case that called for the fourth instruction requested, and the court properly enough passed it over.

The fifth request appears to us to be equally groundless. An officer must be the judge of the time at which he will start for the jail, and the state of weather in which he will go. He has a right to start at any hour he may choose, or his business require, and in such weather as he may find at the time; provided he does not needlessly expose the prisoner's health or do him a personal injury. It will not answer to restrict an officer in these particulars, and no specific rules can be laid down without seriously interfering with the rights and duties of an officer. To fix and limit the hours in which he may travel, or to say that he is to be governed by any particular temperature in the weather, would be alike impracticable. He must exercise his judgment in these matters, and it is a sufficient protection to the prisoner, to hold the officer liable for any needless exposure or unnecessary personal injury.

The court entertain no doubt that there should be

*Judgment on the verdict.*