## LOCKWOOD *a.* MERCEREAU.

*New York Superior Court ; At Chambers, March,* 1858.

### ESCAPE.—RECAPTURE.

The distinction between a voluntary and a negligent escape.

That the prisoner was recaptured in another State by a sheriff of this State, after a negligent escape from his custody here, is not a ground for granting the prisoner's application for a discharge.

A violation by the sheriff of the directions of the statute, in respect to the mode of imprisonment, is not a ground of discharging the prisoner on motion.

Application for an order of discharge from imprisonment on execution against the person.

The facts are fully stated in the opinion.

*Henry C. Place*, for the defendant.

*Mr. Vanderpoel*, for the sheriff.

HOFFMAN, J.—On July 8, 1857, the plaintiff in this action obtained a judgment against the defendant. In October he was arrested on final process, and confined in the Eldridge-street jail. He agreed with the keeper to pay him $10 a week for the use of the parlor, and to eat with the family, instead of being locked up in a cell and receiving jail fare; that in common with others, who made a similar arrangement, he was permitted to go into a yard outside of the walls, but adjoining the jail, and inclosed with a board fence on three sides, and by the rear wall of the jail on the fourth side. It was, in fact, used for privies to the jail, and was unroofed. The door opening from the rear wall into it was left open during the day. No bond for the limits was given by the defendant. On the 2d of November he escaped from this yard, by climbing over the fence, as is admitted. He was rearrested on the 17th of November, in the city of Morris, State of Illinois, and imprisoned again in the jail.

Other matters are stated in his affidavit respecting the mode of his treatment, which will be hereafter noticed.

It is also alleged that the plaintiff had sued the sheriff, and received payment from him of the amount of the execution.

It seems to be fully settled that after a voluntary escape, when the party is in custody on final process, the officer cannot retake him. (Lansing *v.* Fleet, 2 *Johns. Cas.*, 3 ; Nutt *v.* Jones, 1 *Cow.*, 99.) Although, in the language of the books, a voluntary escape cannot be purged, it means merely that the plaintiff's right of electing to sue the sheriff cannot be impaired. But if the prisoner voluntarily returns, and is in prison, the plaintiff may, by renewing the process, treat him as again in custody on his execution, or still may hold the sheriff liable. (Lansing *v.* Fleet, *ut supra ;* Thompson *v.* Lockwood, 15 *Johns.*, 256 ; Littlefield *v.* Brown, 1 *Wend.*, 398.)

It is equally clear " that in case of a negligent escape, both

the plaintiff and the sheriff have a right to retake the prisoner; but the plaintiff may elect to proceed against the sheriff, who will be liable to him, unless by fresh pursuit he retakes the prisoner before action brought. When the escape is tortious, the sheriff has every requisite remedy; either he may retake the defendant, and detain him till he is indemnified, or he may elect not to retake him, but to bring an action against him for the escape." (Lansing *v.* Fleet, *ut supra,* and cases.)

So Watson (*On the Office and Duty of Sheriffs,* 142) says:— "The sheriff may retake a prisoner, who has escaped out of his custody without his privity, in any county, on fresh pursuit; and to do so may break open an outer door, and may retake him on a Sunday. The sheriff, after a retaking, may detain the party until he is satisfied for the damage sustained by reason of the escape." He cites *Dalton's Sheriff,* 139, Ridgway's case (3 *Reports,* 52). The latter is a very explicit authority to these propositions. If the sheriff retake him in another county, where he cannot have the custody of him, yet as the escape was of his own wrong, whereof he shall not take advantage, the sheriff might take him in any other county." Boynton's case (3 *Reports,* 446) is to the same effect. If one in execution escape in his own wrong, he shall never have an *audita querela,* if he be retaken, to discharge him from his imprisonment. To the same effect is Colley *v.* Morgan (5 *Georgia,* 178).

What, then, is the distinction between a negligent and a voluntary escape? Mr. Crocker, in his *Treatise on Sheriffs,* &c., (§ 577), states it thus: "An escape is voluntary when it is with the assent of the officer having the prisoner in custody; and it is negligent, when such escape is without the knowledge or assent of such officer, whether it be from the officer on the arrest, from the jail, or from the liberties thereof."

In Colby *v.* Sampson (5 *Mass.,* 310), it is said that every liberty given to a prisoner not authorized by law, is a voluntary escape.

In Burns *v.* Brian (1 *Speers,* 131), it was held that a sheriff might permit a debtor, confined in jail, to occupy any of the apartments of the building without being guilty of an escape, provided he is not permitted to be without the prison walls, without lawful authority.

And in Riley *v.* The State (16 *Conn.,* 47), an imprisoned con-

vict went about the lands connected with the jail, went to an adjacent barn connected with it to feed cattle, &c., all with permission of the jailer. He then left the State, and was held guilty of a criminal escape.

The rule in Massachusetts appears to be very rigorous as against the sheriff. (3 *Mass.*, 86 ; 7 *Ib.*, 200 ; 10 *Ib.*, 373.) Yet in one case it was decided that going into the jail-yard in the night-time, for purposes indispensably necessary, when there were no accommodations in the jail, does not constitute an escape. (Pattridge *v.* Emerson, 9 *Mass.*, 122.) The case of McClellan *v.* Dalton (10 *Ib.*, 190) appears to throw some doubt on this.

In Pennsylvania the yard of a jail is within the rules; and it is no escape to allow a prisoner to use it. (Green *v.* Hern, 2 *Penn.*, 107.) And in Jones *v.* Able (1 *Rowl.*, 285), the escape of one who had the liberty of the yard was considered a negligent escape.

The actual intent to acquiesce in an escape, to characterize it as voluntary, is shown in the case of Wilkes *v.* Slaughter (3 *Hawks*, 211), where the sheriff gave the prisoner the keys of the prison. It was held an escape, although he did not go beyond the walls.

If the case rested upon general principles and authorities merely, I should feel unable, satisfactorily, to say that the escape in this instance could be deemed a voluntary one, so as to prohibit a recapture.

But it seems to me the statutory provisions in our State afford a decisive answer. By chapter 32 of the Laws of 1846, all the city and county of New York shall be the jail liberties of such city and county.

By the Revised Statutes (2 *Rev. Stats.*, 433, § 40), every person in custody, by virtue of an execution in a civil action, shall be entitled to be admitted to the liberties of the jail, upon executing a bond as prescribed in the succeeding section. Then by section 67, an escape is defined, first, by declaring that the going at large, within the limits, of any prisoner who has executed such bond, *or of any prisoner who would be entitled to the liberties upon executing such bond,* shall not be an escape; and next, that the going at large without the liberties shall be such. It then proceeds:—The sheriff, in whose custody such

prisoner shall have been, shall have the same authority to pursue and retake such prisoner, as if the escape had been made from the jail.

And so by section 63, as modified by the act of 1847 (*Laws of* 1847, *ch.* 390, § 2), if a prisoner committed to any jail in execution in a civil action shall go or be at large without the boundaries of the limits of such jail, without assent of the party, the same shall be deemed an escape, and the sheriff be answerable. (See further, Peters *v.* Henry, 6 *Johns.*, 121 ; and Jansen *v.* Hilton, 10 *Johns.*, 549 ; Lampson *v.* Lawson, 5 *Day*, 506.)

It seems to me very clear that the escape in this case was purely a negligent one, and the right to retake is undeniable.

2. It is next objected that the arrest in the State of Illinois was wholly illegal and void, and that the defendant is entitled to his discharge on that ground.

The case cited of Nichols *v.* Ingersoll (7 *Johns.*, 145) settled that bail might depute another person to take and surrender the principal, and that they could make the capture in another State. The court, in the opinion, support the right by assimilating it to that of the sheriff to recapture a prisoner escaped in a neighboring State. They treat this as undeniable. How far the government of such State might consider its peace disturbed, or its jurisdiction violated, and relieve on *habeas corpus,* was a question not before the court. This authority is decisive.

3. It is insisted that the sheriff is violating the provisions of the statute in the mode in which he is confining the defendant. If so, the statute has pointed out the punishment to which he is subject, by damages to the party aggrieved and indictment for a misdemeanor, as well as the loss of his office. (2 *Rev. Stats.*, 428, § 11.)

The application must be denied.