Radcliff, J.
The fact that Hicks consented to the second arrest, on the I Oth May, does not, I think, solely depend on the express testimony of Merritt. The circumstance that on that day he was in the actual custody of Merritt, and also of the defendant, without any resistance on the ground of their want of authority to hold him, is alone presumptive evidence that he had submitted to that arrest. As there is nothing to countervail this presumption, the objection against the competency of Merritt as a witness, appears to me unimportant and unnecessary to be considered.
The principal question is, whether, after the voluntary escape suffered by Merritt, and the subsequent arrest of Hides, consented to by him, it was lawful to detain him as a prisoner ? If it was lawful, then it was the duty of the defendant to detain him, and he would be liable to the sheriff for the seeond escape. If it was not lawful, the second arrest must be deemed a nullity, and the defendant in that case would not be liable.
It ought to be observed that this is a question between the sheriff and his deputy only, by which the interest of the plaintiff, in the original suit, cannot be affected. The general rules on the subject of escapes, so far as they respect the right of reeaption by the plaintiff and the sheriff, appear to be well settled.
* I. In ease of a negligent escape, both the plaintiff and the sheriff have a right to retake the prisoner, but the plaintiff may elect to proceed against the sheriff, who will be liable to him, unless by fresh pursuit he retakes the prisoner, before action brought.
2. In case of a voluntary escape, the plaintiff may also retake the prisoner, but the sheriff cannot; and the prisoner may resist any attempt by him for that purpose. (1 Roll. Abr. 901, 902; 1 Lev. 211; 1 Sid. 330; 1 Show. 174; 2 Jon. 21; 2 Mod. 136.)
3. If the sheriff let the prisoner go by the consent of the plaintiff, neither he nor the plaintiff can retake him.
Neither of these positions extend to the case of a voluntary escape, and a subsequent voluntary return or submission of the prisoner. The right of the plaintiff, however, is undoubted, that he may elect his remedy, either against the prisoner or the sheriff, notwithstanding the free return of the former, and his submission to the arrest, for as between the plaintiff and the sheriff, nothing can purge a voluntary escape. The sheriff, in all events, continues liable to him, unless he choose to relinquish his responsibility and pursue his remedy against the prisoner. It is in this sense, and in relation to the sheriff only, that the authorities are to be understood, when they say that a voluntary escape cannot be purged.
It is also proper to remark, that neither the present question, nor any of the rules that have been mentioned, depend on the statute of 8 & 9 Wm. III. which has been adopted here, and was cited on the argument. The plaintiff, before that *5 statute, in all cases of negligent or voluntary escapes, had a right to retake the prisoner, and the statute thus far is in affirmance only of the common law. It enacts that if the prisoner escape, by any ways or means howsoever, the creditor may retake him by any new writ, or sue forth any other execution. The only material alteration made by the statute is, that the creditor may also have a remedy, by any other species of execution.
It appears to me essential to the rights of the plaintiff\ that the sheriff should be permitted to hold a prisoner who voluntarily returns and submits to a legal process, although after a voluntary escape. ■ He cannot hold him with a view to his own indemnity, because, by being accessory to the escape, he violated the duty of his office, and forfeited all right to the aid of the law. He is thereby made liable to the plaintiff for the whole amount of his demand, and, with respect to him, may be completely substituted, in point of responsibility, for the prisoner. But he is the substitute, only at the election of the plaintiff. The latter is not bound to look to the sheriff. He may continue his remedy against the prisoner, and retake him by new process, or, if already in jail, suffer him to remain, and admit him in execution on the former process. If the prisoner be already in jail, on a voluntary return, and nothing be done to determine the plaintiff’s election to substitute the sheriff, it follows, of course, that the prisoner is again in execution at the suit of the plaintiff. No act of the plaintiff is necessary to that end. The parties are restored to their former situation, unless the plaintiff elect to proceed against the sheriff: and until that be done, it must be lawful in the sheriff to detain the prisoner.
This appears to be a natural and equitable course in relation to ■ all concerned. It gives to the plaintiff a complete redress, against both the sheriff and the defendant, and effectually places the remedy against both in his power. It may be very important to his rights that the prisoner should thus be deemed to be in execution, for he may have good reasons to elect to pursue his remedy against him; but if *6 the sheriff has not the power to hold him, this remedy must again be defeated, unless the plaintiff be able to retake him by new process. In fact, it would lead to the position, that the plaintiff can, in such case, have no remedy against the prisoner but by a new writ, which is not warranted by the cases on the subject. Aá'ít respects the defendant himself, no injury is done. His imprisonment is the consequence of his own act, by which he ought to be concluded ; and there is no reason why the law should interpose to exempt him from it. He is no more an object of favor, or entitled to relief, than the sheriff is entitled to the aid of the law to compel his return. With regard to the sheriff, the responsibility he incurs is a sufficient restraint. Beyond this the *rigor of the law ought not to extend. Neither policy nor justice demands it. It would place him in a worse condition than the prisoner himself, for whose responsibility alone he is bound to answer. I therefore think, that the detention of a prisoner, under such circumstances, ought to be deemed lawful, for the benefit of the plaintiff, and in furtherance of his remedy. If lawful, it was the duty of the sheriff, and, of course,- of his deputy, in this instance, to detain him. As between the sheriff and his deputy, it was also material, for by suffering him again to escape, the sheriff was deprived of the benefit of the plaintiff’s election to hold the prisoner in execution, so far as his continuing in custody, afforded the opportunity and the means of making it.
The authorities on the subject, I believe, will be found not only to support the sheriff’s right thus to detain a prisoner, but to impose it on him as a duty, and if he neglect to do it, make him liable as for a second escape. 1 admit there is one case, that of the sheriff of Essex, decided and reported by Ch. J. Hobart, (Hob. 202; 15 Jac. 1;) which is opposed to this doctrine. It was there ruled, that by a voluntary escape the execution was so utterly discharged, that if the prisoner, afterwards, voluntarily returned and continued in jail till the time of a new sheriff, and was then again suffered to escape, the new sheriff was not liable, even though *7 the plaintiff allowed the prisoner so to return and submit to the execution. But this case has been repeatedly overruled, or denied to be law. (1 Roll. Abr. 901, 902. (B.) 10 Car. 1 ; 11 Yin. 26, pi. 8, S. C. In Yiner it is if he return.) 1st. By a case in Roil. Abr. where it was resolved that if A. be in execution at the suit of B. and escape with the consent of the sheriff, and afterwards he return, or the sheriff retake him, and keep him in prison, he shall again be in execution to B. for although B. may bring an action against the sheriff for this voluntary escape, yet this is at his election, and it may be that the sheriff is incompetent to make a recompense. 2d. By Ch. J. Hale, in James v. Pierce. (2 Lev. 132; 27 Car. II.) In that case there was a voluntary escape from the warden of the Fleet, and a voluntary return of the prisoner. A new warden was appointed and a second escape permitted. It was resolved that an action lay against *the new warden; and it is there held that the plaintiff might, at his election, take the prisoner to be in execution, and charge the new warden for the last escape or admit him to be out of execution, and charge the old warden. 3d. By the case of Lenthal v. Lenthal, (2 Lev. 109; 26 Car. II.) where there was a voluntary escape from the marshal, and a voluntary return. The marshal died, and the office descended to his son, who again suffered a voluntary escape, and it was resolved by the whole court, after considering the cases above cited from Hob. and Roll, that the action well lay against the son, for a second escape.
Again, in the case of Grant v. Southers. (6 Mod. 183 ; 3 Anne.) Grant had been in custody of the former marshal, who voluntarily suffered him to escape. Grant, afterwards, came voluntarily and returned, and being found in custody by the succeeding marshal, was detained by him; upon whieh Grant brought an action of false imprisonment against the new marshal. The court granted an imparlance till the next term, but at the same time, affirmed that it was lawful to detain him, and that to suffer him to go at large would be an escape in the second marshal.
*8 It appears that Comyns, whose name adds a sanction to these authorities, had the same view of the law on this subject. In his Digest, (3 Com. Dig. 647, E.) he says, “ if a person escapes, and afterwards returns to the prison, the plaintiff may admit him in execution, although he has a remedy against the sheriff.” And again, (ibid.) “ so though the escape was voluntary by the jailer and without the plaintiff’s consent.”
From the tenor of these cases, it appears that the prisoner is considered to be again, of course, in execution, at the suit of the plaintiff, unless the latter evinces his intention to abandon that remedy, by proceeding against the sheriff for the escape. It is certain that it is not necessary for him to take out a new writ against the prisoner, but may admit him to be in execution on the former process. This is the express language of several of the cases. The plaintiff may, both by common law and the statute, take out such writ j but it would be absurd to compel him to do it when his *case does not require it. Generally, however, a new process might be necessary; for the sheriff has no right to retake the debtor without it, and his voluntary return is seldom to be expected.
The circumstance that in most of the cases which have been mentioned, the question as to the legality of the prisoner’s detention has arisen on a second escape suffered by a subsequent sheriff, is, in my opinion, immaterial to its merits. The case from Rolle is, however, not of that description. It was there decided in relation to the same sheriff. But it cannot be important. If the imprisonment was originally unlawful, it cannot be made lawful by the change of keepers. The rights of the plaintiff, or the power of the sheriff, or the personal liberty of the defendant, cannot depend on a circumstance like this. It must be obvious, too, that the question can seldom arise, except where there is a change of the sheriff; for with respect to the same sheriff a second escape cannot be material when he is equally liable for the first.
There is, I believe, no subsequent case which contradicts *9 this doctrine, unless that of Ravenscroft v. Eyles, (2 Wils. 294,) be so considered. That was a voluntary escape on mesne process, and a voluntary return by the prisoner. The plaintiff proceeded to judgment, but not to execution, and then sued the warden for the previous escape. The question submitted to the court, was whether the plaintiff, having proceeded to judgment, could maintain his action ? The court determined that he could, and in reasoning on the subject, they say, that it being a voluntary escape, the jailer could not afterwards retake and detain him for the same matter ; that the plaintiff might retake him by an escape warrant, but had his option to proceed as he pleased, either to judgment and execution against him, or against the warden ; and yet they ¡'add that the prisoner was no longer in jail at the plaintiff’s suit; and although the plaintiff might lawfully proceed to judgment, he could not charge him in execution. This case appears to me obscure and contradictory, unless *the court intended to be understood that the plaintiff, in order to charge him in execution, was obliged first to retake him, (although already in jail,) by an escape warrant. If so, the remedy by an escape warrant being founded on the statute of Anne, (1 Anne, c. 6,) which is not adopted here, can have no application to the present case. The case of Key and Briggs, (Skinn. 282,) there cited to be in point, does not support that position; and, besides, this mode of redress by the plaintiff, questionable as it may be, was not connected with the matter submitted to the consideration of the court. It was sufficient for the purpose of that decision to declare that after a voluntary escape on mesne process, the plaintiff, although he proceeded to judgment, might still maintain his action against the warden. I think, therefore, this case does not bear with any weight on the present question.
On the whole, I am of opinion, both on principle and the authorities on the subject, that the second arrest being submitted to by Hicks, was lawful, and, of course, that his subsequent detention by the defendant was equally lawful; that the interest of the plaintiff was materially concerned in *10 •beeping Hicks in custody, and that it does not lie in the 'mouth of this defendant to excuse himself by the previous default of Merritt, whose delinquency cannot purge his own ; and, of course, that his suffering the second escape was a breach of his bond of indemnity, and rendered him liable to this action.
Kent, J.
The question is, whether, upon the facts stated in the case, the defendant is responsible to the plaintiff upon his bond.
By the common law, as understood before and during the reign of Elizabeth, a voluntary escape of a prisoner in execution. completely and forever discharged him from the debt, so that neither the plaintiff nor sheriff chuld retake hiip for the same demand. (Bro. tit. Escape, pl. 12 and 45. Linacre and Rhodes case, 2 Leon. 96. Phillips and Stone's case, 2 Leon. 118.) The law was afterwards changed, or understood differently, and there were repeated decisions * in the reign of Charles II. and of William and Mary, that after a voluntary escape, the party was entitled to new process against the debtor, and was not confined exclusively to his remedy against the sheriff, who might, perhaps, be unable to indemnify him. (2 Mod-159. T. Jones, 21. 1 Sid. 330. 1 Lev. 211. 1 Vent. 269. 1 Show. 169. 1 Salk. 271.) The statute of 8 and 9 Wm. III. c. 27, gave the party the like remedy of further process against the debtor’s person, as well as of process against his property, after a voluntary escape: and it was, therefore, in part, declaratory of the law, as antecedently received and established. But neither the decisions previous to the statu’e, nor the statute which pursued and sanctioned them, impaired the plaintiff’s right of action against the sheriff, or gave the sheriff any authority to retake the prisoner upon the original process. The law in that respect continued the same as before, that, after a voluntary escape, the authority of the sheriff over the prisoners gone, and he cannot retake or detain, without new authority from the plaintiff. (3 Co. 52, 56. Hob. 202. 2 Wils. 295. 5 Term Rep. 25. 1 Sid. 330. 1 Show. 169. 1 Vent. 369.) Some of the cases speak of a prisoner *11 upon a voluntary return, after a voluntary escape, as again in execution; but it will appear, upon an examination of those cases, that they all terminate in this conclusion, that he is to be deemed so, at the election of the plaintiff, and for his benefit, and not at the election of the sheriff. It was said arguendo, in the case of James v. Pierce, (1 Vent. 269 ; 3 Keb. 453,) and seems to have been agreed to by the court, that although the plaintiff may elect, yet, until he makes his election, the prisoner cannot be said to be in execution } and Hale, in giving the opinion of the court, said, that if the prisoner should bring trespass against the jailer, for being detained after a voluntary escape, the jailer could not defend himself. The same doctrine was laid down in the case of Ravenscroft v. Eyles, (2 Wils. 294,) and Ch. J. Wilmot observed, that a prisoner, when voluntarily suffered by the jailer to escape, is instantly at large, and that the jailer cannot retake and detain him for the same matter, and that, *although he voluntarily returns, he is not a prisoner at the plaintiff's suit, even if he is locked up every night. All the improvements, since the reign of Elizabeth, upon the law of voluntary escapes, have been made for the exclusive .benefit of the plaintiff; none of them have been intended to relieve the sheriff in any respect from the consequences of his tort.
The only case that looks like a qualification of the law, as I have stated it, is that of a voluntary escape and return, and continuance in prison until the succession of a new sheriff. In that instance it is decided, (2 Lev. 109, 132 ; 6 Mod. 182; contra, Hob. 202,) that the new sheriff is bound to detain the prisoner, and is liable for his escape, because the plaintiff has his election to consider him again in execution. If this be a legal distinction, the reason of it may be, that the prisoner comes regularly, and by color of law, to the custody of the new sheriff, which is sufficient to justify him to detain. The new sheriff is charged with the custody of all prisoners delivered over by his predecessor, or that are in jail, if his predecessor die in office ; and the books accordingly say, (3 Co. 72, b. n. 3,) that no mischief arises to a new sheriff, if he keep all the prisoners well until he hath perfect notice of all *12 the executions. The cases assign as one reason for the right of action against the new sheriff, that the plaintiff is never to fee without a remedy; and if the old sheriff fee dead, his right of action against him, being personal, is dead also; (Dyer, 322; 1 Roll. Abr. 921 ; T. Jones, 21;) or if the plaintiff had affirmed the prisoner in execution, during the time of the former sheriff, then all remedy against him would equally have ceased. In these instances, unless the successor was responsible for all the prisoners turned over to him, the plaintiff might he left remediless.
The conclusion which I draw from a review of the numerous cases upon this subject, and from which I have endeavored to extract the substance, results in these propositions :
Tst. That after voluntary escape, the sheriff who permitted the escape cannot retake or detain the prisoner without authority from the plaintiff. That all his legal control over the prisoner ceases by his own wrong, and no act of his, and no assent of the prisoner, with whom he must be deemed in collusion, can help him. The law will not help a sheriff to retake or detain a prisoner after a voluntary, although it may after a negligent escape. This rule is extremely sound in principle, and salutary in its tendency, to prevent any collusion betwen the sheriff and his prisoners, and to secure to the public the faithful and vigorous execution of process.
2dly. That the plaintiff shall never suffer for the sheriff’s default. The law is active to help him, and accordingly gives him his election to charge the sheriff, or to pursue the defendant with fresh process ; and if the defendant has voluntarily put himself in prison again, instead of fresh process, which would be useless, he may detain him, by affirming him tobe again in execution. And, as all the authority of the sheriff over the prisoner, subsequent to a voluntary escape, must be derived from the act of the plaintiff, it follows, that until such fresh process is received, he cannot in the one case, retake, and, that until notice is given of the plaintiff’s election to hold., he cannot, in the other case, *13 detain the prisoner. There is no evidence of any such election in the case before the court. The sheriff must be considered as having paid the debt, by reason of the first escape, and he was not injured by the act of the present defendant, who had no lawful authority to detain the prisoner. Whether Hicks was, or was not, voluntarily in custody a second time, is, therefore, immaterial, and judgment ought to be rendered 'for the defendant.
Benson, J.
The plaintiff was sheriff, and the defendant and Merritt were his deputies. Merritt having Hicks in custody on execution, Voluntarily suffered him to escape. Hicks was, afterwards, voluntarily in the custody of the defendant, *and, as intended, on the execution, and he then escaped from the defendant. The plaintiff has since paid to the party the amount of the execution, and has thereupon brought the present suit against the defendant on his bond of indemnity, and a verdict has been taken for him, subject to the opinion of the court on the question, whether the defendant could lawfully have detained Hicks?
The law on this question is conceived to lie within a very narrow compass. “If A. be in execution at the suit of B. and escape with the consent of the sheriff, and afterwards the sheriff retakes him, and keeps him in prison, he shall be in execution to B. for although B. may bring an action against the sheriff for this voluntary escape, yet that is at his election, and the party in execution shall not by his own wrong put B. to his action against the sheriff, contrary to his will, and it may be that the sheriff is not able to give him recompense. So adjudged on an audita querela by A. against B. brought on this surmise.” (Roll. 902, s. 8.) In the same case, as found in another book, it is said that A. “ returned to the prison.” (11 Vin. 326.)
“If the prisoner escape of his own wrong, the sheriff may take him, and keep his body under custody, till he hath agreed with him, or may have an action on the case for his tortious escape, and he shall never have an audita querela against the sheriff; but it is otherwise when he escapes with *14 the consent of the jailer, for then he cannot take him againj and in snch case he shall, for his discharge, have an audita querela.” (3 Coke, 52.)
If the defendant will return and remain in prison, until a new sheriff is made, and be then turned over to the new sheriff, he shall be so far in execution as that if he shopld escape again, the plaintiff may have his election; either- to take him to have been in execution, and charge the new sheriff for the last escape, or admit him have been out of execution, and charge the old sheriff; for, perhaps, the old sheriff may not be responsible, orlnay be dead ; and because it would be mischievous if the new sheriff might excuse himself by saying, that the defendant was not a prisoner, and so he could not detain him; for sheriffs permit prisoners *in execution to go out on security, and when they are sued they' plead a retaking on fresh suit, and so the prisoners go out and return, at their pleasure, and if the] new sheriff may, notwithstanding he had the defendant actually in prison, excuse himself in -this way, that the old sheriff permitted a voluntary escape, all the creditors of the prisoner who was put there in the time of the old sheriff would be defrauded; for it will be very easy for the new sheriff to prove a voluntary escape by the old sheriff, when it might not have been in the power of the creditor to have proved it to have been voluntary.” (2 Lev. 189,132.)
“Although the escape is voluntary, yet debt (on the judgment) will lie against the party who escapes, and a scire facias will also lie on it against him.” (1 Yent. 269.)
“ On an escape against the will of the sheriff, either the plaintiff or the sheriff may retake. On an escape with the consent of the sheriff, the plaintiff only hath remedy to take, and not the sheriff. (1 Show. 177.) The law in reference to the point or question in the present case, as collected from these authorities, appears to be,
1st. That as it relates to the plaintiff, there is no difference whether the escapéis voluntary or tortious, and that he has the same remedies in the former, as in the latter case; *15 either he may take out new process, or, if the defendant should be in custody without new process, he may then, as it would seem, by some other act,’affirm him still to be in execution, or he may bring an action of debt on the judgment 5 or revive it by scire facias; or bring an action for the escape against the sheriff; and without being liable to an audita querela, in the mean time, before he shall have elected between these several remediés. But
2dly. That as it relates to the sheriff, there is a difference in the two cases ; for that where the escape is tortious the sheriff has every requisite remedy; either he may retake the defendant, and detain him till he is indemnified; and also, being in the mean time liable to an audita querela ; or he may elect not to retake him, but, to bring an action against him for the escape; on the contrary, where the escape *is voluntary he has no remedy; he cannot, without new process by the plaintiff, retake the defendant, and even if the defendant should voluntary return into custody, yet he cannot, unless the plaintiff will affirm him to be in execution, detain him, and if he should so detain the defendant, an audita querela will lie against him.
3dly. If the defendant, however, shall be in prison, when a new sheriff shall happen to come into office, and be turned over to the new sheriff, that the new sheriff has.then a right to detain him; and the reason with the law, for implying this right in the new sheriff, is for the sake of the correlative duty which would then be implied in him, to detain the defendant, in order thereby not only to give the plaintiff an additional surety in the event of a second escape, but also to prevent the fraud to which he would otherwise be exposed ; so that it is intended for the advantage and safety of the plaintiff, and not for any emolument or other benefit to the new sheriff, and certainly not for any remedy to the old sheriff. Indeed, the law cannot, consistently with itself, interpose for the sheriff, when there has been a voluntary escape ; for the escape being to be imputed to him as his own fault, it is fit he should be left to suffer the consequences of it. It remains to fee noticed, that the defendant reserved a question as to the *16 evidence of th efact, whether, when Hicks came into his custody, he came voluntarily; but if the law is, as has been stated, that the defendant, in whatever manner, he might have acquired the custody of Hicks, without new process by the party, could not lawfully have detained him, then th efact itself is immaterial, and, consequently, the consideration of the evidence of it may he omitted. I am therefore, of opinion, that there must be judgment for the defendant.
Lewis, J. was of the same opinion.
Lansing, Ch. J. being related to the plaintiff, gave no opinion.
Judgment for the defendant.(a)

(a) In the case of Littlefield v. Brown, 1 Wend. 398, 402, Savage, Ch. J. observed, that “ between a voluntary and a negligent escape, there is a striking difference as regards the rights of the sheriff. His liabilities to the plaintiff are the same ill both cases. There is, however, a difference as to the remedy. In case of a negligent escape, if the prisoner return before suit brought, the escape is purged and he is of course a prisoner again at the suit of the plaintiff. But in case of a voluntary escape, although the prisoner return before suit brought, the escape is not ipso facto purged as in case of a negligent escape ; hut the plaintiff may prosecute for it. He may however affirm him in prison at his suit, but such affirmation will not be presumed. It requires some positive act; either new process, or notice that the prisoner is received again as a prisoner at the plaintiff’s suit. The sheriff’s rights, however, in relation to the prisoner, are very different. In case of a negligent escape, the sheriff may pursue and retake the prisoner; in case of a voluntary escape, he cannot without authority from the plaintiff: yet it seems, in case of a voluntary return of the prisoner, the sheriff may receive him into custody, but cannot detain him without the authority or assent of the plaintiff.” And in the case of Thompson v. Lockwood, 15 Johns. R. 256, 259, Spencer, J. in reviewing the principal ease, says, “ it settles the point, that after a voluntary eseape, the sheriff cannot lawfully retake or detain a prisoner, unless the plaintiff in the execution shall issue a new process; nor can he detain on the surrender of the prisoner himself, unless the plaintiff in the execution does some act showing his election to hold him on the old process.” And it was accordingly held in the latter case, that if the sheriff after a voluntary escape arrest the defendant on the same execution, and take from him a bond for the jail liberties jointly and severally with another person, that such bond will be void for duress both as to the principal and surety. See Wheeler v. Bailey, 13 Johns. R. 366. See also Grah. Prac. 2d. ed. 418, and Harvey v. Huggins, 2 Bailey R. 252. Atkinson v. Matteson et al. 2 T. R. 172, 177, per Grose, J. Atkinson v. Jameson, 5 id. 25. Featherstonhaugh v. Atkinson, Barn. 373. Tillman v. Lansing, 4 Johns, R. 45, 47.

Wash. C. C. R. 464. See also Talbot v. Clark, 8 Pick. 51. Mead v. Engs, cited above.