PETITION OF JOHN McMANAMAN for a writ of *Habeas Corpus*.

In *scire facias* against bail, execution issued and the defendant was committed to jail. He at once gave bond, under Pub. Stat. R. I. cap. 225, for the liberty of the jail yard, but allowed the statutory period of thirty days to elapse without making an assignment of his property, and without returning to close jail; whereupon a *pluries* execution issued, the defendant was committed again, and his offer to give another jail limit bond refused.

On his application for *habeas corpus*,

*Held,* that the commitment under the *pluries* execution was proper.

*Held,* further, that the offer of another jail limit bond was properly refused.

The defendant's neglect to assign or to return to close jail was an escape; the remedy for which is either commitment on a *pluries* execution or action on the jail limit bond, the latter being statutory and cumulative.

In Rhode Island, if the return on an original execution shows it to be unsatisfied, the clerk of court issues an *alias* on request. If the non-satisfaction of the execution does not appear from the return, the court may order an *alias* on motion and without notice.

*Query,* if it be good practice to order an *alias* without notice.

*Held,* that the *alias*, if issued without notice, is sufficient for the debtor's arrest and detention notwithstanding the lack of notice.

HABEAS CORPUS. The case is stated in the opinion of the Court.

*November* 24, 1888. DURFEE, C. J. The petitioner was com mitted to the Providence County Jail, August 7, A. D. 1888, on an *alias* execution taken out on a *scire facias* judgment against him as bail in a criminal case. He immediately gave bond with surety for the liberty of the jail yard under the statute, Pub. Stat. R. I. cap. 225, §§ 1 and 2.[1] The condition of the bond was that

---

[1] Pub. Stat. R. I. cap. 225, §§ 1–6, are:

" SECT. 1. Whenever any person shall be imprisoned for want of bail in any civil action, or upon surrender or commitment by bail in any such action, or for non-payment of any military fine, or state or town tax, or an execution in any civil action, except on executions awarded in actions on penal statutes, or on bonds given in pursuance of the provisions of this chapter, or in any actions of trover, detinue, or trespass other than trespass *quare clausum fregit*, in which title to the close was in dispute between the parties, and trespass and ejectment, or in an action prosecuted by bail against his principal, the sheriff or keeper of the jail may grant to such person a chamber or lodging in any of the houses or apartments belonging to such jail, and liberty of the yard within the limits thereof, upon reasonable payment to be made for chamber-room and upon bond being given by such person as hereinafter provided.

" SECT. 2. Such person shall first leave with such sheriff or keeper of the jail a bond to the creditors with two or more sufficient sureties, being inhab-

he should continue a true prisoner within the yard, "without committing any manner of escape or escapes during the term of his restraint." Section 4 of said chapter provides that no person, committed on execution, shall have the liberty of the yard for more than thirty days after his said commitment, unless he shall within that time execute an assignment for the benefit of his creditors, and section 6 provides that if any person so committed shall neglect to "render himself to the keeper of the jail," in the jail,

---

itants of this State, bounden jointly and severally at least in double the sum for which he is imprisoned, with condition in form following: That if the above
       now a prisoner in the jail in       within the county of  . .  at the suit of    , shall from henceforth continue to be a true prisoner in the custody, guard, and safe keeping of      keeper of the said jail, and in the custody, guard, and safe keeping of      his deputy, officers, and servants, or some one of them within the limits of the said jail, and keeping the said jailer advised of the place of his usual residence and abode therein, until he shall be lawfully discharged, without committing any manner of escape or escapes during the term of his restraint, then this obligation shall be void, or else shall remain in full force and virtue.

" SECT. 3. Any person confined in any jail who shall give bond as aforesaid may go into any building or place within the exterior limits of the yard, complying with such bond and conforming to law.

" SECT. 4. No person committed on execution shall have the liberty of the prison yard for more than thirty days after his said commitment, unless he shall within the said thirty days execute an assignment of all his estate of every kind not exempted from attachment by law, and wherever the same may be, to such keeper of said jail and his successor in said office, and his heirs and assigns, in trust for the equal benefit of all his creditors in proportion to their demands.

" SECT. 5. The keeper receiving an assignment as aforesaid shall not be held responsible to any person for any property of any assignor, except such as he has actually received into his possession : *Provided*, he shall assign all the interests he shall obtain thereby to the committing creditor, if a resident of this State, upon his request, or to such person, being a resident thereof as such creditors shall name, to be held by such creditor or person so named, his heirs, executors, administrators, and assigns, for the purposes and uses set forth in said deed, and a record of such assignment and of said transfers shall be made by said keeper.

" SECT. 6. If any person so committed shall neglect to render himself to the keeper of the jail, in said jail, within said thirty days, or make an assignment as hereinbefore provided, he shall be deemed to have committed an escape under his bond for the liberty of the jail yard."

within said thirty days, or make such an assignment, "he shall be deemed to have committed an escape under his bond." The petitioner did not render himself to the keeper or make assignment as aforesaid within said thirty days, and consequently the execution still remaining unsatisfied, he broke his bond by committing an escape under it. November 20, 1888, the Attorney General applied in behalf of the State to the Court of Common Pleas, from which the original and *alias* execution had issued for a *pluries* execution, supporting his application by affidavits to the facts above stated. A *pluries* execution was granted, and the petitioner was arrested thereon and again committed. He offered another bond for the liberty of the jail yard, with the same surety as before, but the keeper of the jail refused to accept the bond or to allow him the liberty of the yard. He petitions for a writ of *habeas corpus* to liberate him from his imprisonment.

The petitioner contends that he is illegally detained, because his commitment under the *pluries* execution was illegal and void, the only remedy for the escape which he is alleged to have committed being a suit upon the bond for breach thereof. Is the position correct?

At common law, when the debtor escapes after arrest or commitment on execution, it is competent for the creditor to sue out another execution and have him rearrested and again committed thereon. *Allanson* v. *Butler*, Sid. 330; *Sudall* v. *Wytham*, 2 Lut. 1264; *Basset* v. *Salter*, 2 Mod. 136; *Appleby* v. *Clark*, 10 Mass. 59; *Brown* v. *Getchell*, 11 Mass. 11, 15; *Cheever* v. *Merrick*, 2 N. H. 376; *Lansing* v. *Fleet*, 2 Johns. Cas. 3; *Fawkes* v. *Davison*, 8 Leigh, 554; *Sharp* v. *Caswell*, 6 Cow. 65; *Tayloe* v. *Thompson*, 5 Peters, 358, 369, 370; *Osborne* v. *Bowman*, 2 Bay, 208. The doctrine declared in *Lansing* v. *Fleet*, *supra*, is that after a voluntary escape the sheriff can not lawfully retake or detain the debtor of his own motion, though he may after a negligent escape, but, so far as the creditor is concerned, it makes no difference whether the escape be voluntary or negligent, it being optional with him in either case to charge the sheriff or pursue the debtor with fresh process. Anciently, when the commitment of the debtor appeared of record by the return of the execution, the English practice was for the creditor, if he wished to reim-

prison the debtor, to sue for a new execution against him in *scire facias ;* but in this country it seems to be the more usual practice to proceed by simple motion to the court, of which motion, according to some of the cases, the debtor ought to be notified. *Fawkes* v. *Davison, supra ; Sharp* v. *Caswell, supra.* In this State under our statute, Pub. Stat. R. I. cap. 222, § 7,[1] when an *alias* or *pluries* execution is wanted, the practice has been for the clerk to issue it, if the prior execution appears by the return thereon to remain unsatisfied ; or if this does not appear, as often happens where the debtor has been committed and released on taking the poor debtor's oath, the practice has been for the court to issue the new execution on motion without notice. In this case no notice was given. Whether as a matter of correct practice, notice should have been given, we deem it unnecessary to determine, for, in our opinion, the new execution, if issuable at all, is not void for lack of such notice, though it may be irregular; and not being void, it was a sufficient warrant for the arrest and commitment and for the detention of the debtor. In such a case, if there has been no escape, the remedy is not a writ of *habeas corpus*, but some proper proceeding in the court from which the execution issued to recall it or set it aside. *Bank of the United States* v. *Jenkins*, 18 Johns. Rep. 305 ; *Commonwealth* v. *Lecky*, 1 Watts, 66 ; *Jeanes* v. *Wilkins*, 1 Ves. 195 ; Church on Habeas Corpus, § 384.

The question then is, whether for such an escape as was committed by the petitioner the common law remedy to recapture and recommit is available, or whether the creditor is confined to a suit on the bond. A remedy given by statute, where one already exists at common law, is generally cumulative only, and does not supersede the common law remedy, unless it appears either expressly or by implication that it was intended to be exclusive. This principle has been applied to escapes. In *Jansen* v. *Hilton*, 10 Johns. Rep. 549, it was decided that if a prisoner who has given to the sheriff a bond for the liberties voluntarily goes be-

---

[1] As follows:

" SECT. 7. Executions, original or *alias*, may be issued by any court at any time within six years from the rendition of the judgment originally, or from the return day of the last execution."

yond the limits, his bond is forfeited, and the sheriff may retake him on fresh pursuit, and recommit him to close custody, or bring an action on the bond. And to the same effect, *Barry* v. *Mandell*, 10 Johns. Rep. 563. In these cases the liberties were regarded as merely an extension of the four walls of the prison. The same doctrine is laid down in *Tayloe* v. *Thompson*, 5 Peters, 358, 369, 370. In *Osborne* v. *Bowman*, 2 Bay, 208, the court held that where a bond is given for remaining within prison bounds, and the debtor goes without them, and the creditor sues out a second execution for an escape and imprisons the debtor, it exonerates the surety on the bond given to the sheriff, for when a man has two remedies he may pursue either at his option, yet he shall have but one satisfaction, and the imprisonment of a man's person is the highest satisfaction known to the law. The case clearly recognizes that the common law remedy is not superseded by the bond. We think there can be no doubt on the authority of these cases, that if the petitioner had committed an escape by going beyond the limits, it would have been optional with the State either to have retaken and recommitted him on a new execution, or to have put the bond in suit.

The question then narrows itself to this, namely, was the debtor's neglect for more than thirty days, either to render himself to the keeper or to make an assignment, an escape. The statute calls it an escape, but would it be an escape if the statute were silent? We think it would. But for the statute allowing the petitioner liberty of the yard he would have committed an escape when he went outside the jail. The statute allowed him the liberty for thirty days on his giving the bond; but for no longer, unless he should within thirty days make assignment as provided, the county[1] continuing to be the jail for him if he made the assignment, but not otherwise. He did not make assignment, and so at the end of the thirty days he was at large; no longer in jail but at large by his own fault. We are of opinion that we should be obliged to hold that he had committed an escape, if the statute had not declared his neglect to be an escape. In *McMichael* v.

---

[1] By Pub. Stat. R. I. cap. 225, § 14, " The limits of each county shall be the limits of the jail yard thereof."

*Rapelye*, 4 Ala. 383, the court uses the following language: "By giving the bond the prisoner is not discharged from custody, but is as much within confinement as. if inclosed within the walls of the jail, because the stipulation of the bond is that he will continue in the custody of the keeper of the jail, his steward, deputy, or other officer within the prison bounds as by law established. For the space of sixty. days these bounds extended to the limits of the county; but after that period they were restricted to the walls of the jail; it is, therefore, just as much an escape to remain out of the jail after the expiration of sixty days, as it would be within that time to withdraw from the county."

The petitioner directs our attention to the words of our statute before recited, which declare that the debtor's neglect to make an assignment, or to return to close jail, shall be deemed "an escape under his bond;" and argues from them that it is only under his bond that it can be deemed to be an escape. We do not think the words warrant so broad an inference. It is only "under his bond" that the debtor, after giving the bond, is in prison. The purpose of the words was, in our opinion, to put it beyond question that such a neglect is a breach of the bond, but not to take away any remedy which the creditor would have independently of the bond. It is to be borne in mind that the debtor is privileged to give the bond or not as he pleases; but the creditor is compelled to take it whether he pleases or not. The words referred to were doubtless originally introduced into the statute, because the bond is in form the same as it was for long years before the continuance of the liberty of the yard was made conditional on the debtor's making the assignment.

We do not think the petitioner was entitled after his recommitment to go out again on another bond. His right to the liberty of the yard on giving bond continues only for thirty days after the original commitment. *Church* v. *Proctor*, 5 R. I. 20.

*Petition dismissed.*

*John M. Brennan, George J. West & Hugh J. Carroll*, for petitioner.

*Horatio Rogers*, Attorney General, *contra*.