## MUTUAL SAVINGS FUND HARMONIA, A CORPORATION, RESPONDENT, v. PETER GUNNE, APPELLANT.

Argued October 31, 1932—Decided January 23, 1933.

For the appellant, *George B. Bailey.*

For the respondent, *Samuel Koestler.*

The opinion of the court was delivered by

PARKER, J. The suit is against the maker of a bond for $60,000 secured by mortgage, for a deficiency arising out of a sale in foreclosure of the mortgaged premises, the price realized being insufficient to satisfy the decree. The two principal defenses interposed, both of which were overruled, were, first, that the plaintiff could not have judgment, because of having begun the action before filing a notice of *lis pendens* as required by the statute of 1907 (*Pamph. L.*, *p.* 563; *Comp. Stat.*, *p.* 3423); and secondly, that the defendant, who prior to the foreclosure had conveyed the mortgaged premises to a third party, was nevertheless a necessary party to the foreclosure suit as one entitled to redeem, and

had not been made a party nor served with notice of the fore-closure and knew nothing about it until after the sale, and hence had no opportunity to question the amount due on the bond nor to bid at the sale or to procure others to bid, and that the property was knocked down for a nominal bid of $1,000. The second defense just stated, with others depending thereon, was struck out as sham or frivolous, and the first reserved for jury trial.

As to the first defense, the parties stipulated the evidential facts and submitted the issue without jury to Judge Cleary, who found contrary to defendant's claim, and judgment for plaintiff was accordingly entered.

The essential question relative to the first defense is, when was the suit begun in contemplation of law?

The act of 1907 is a supplement to the act of 1880 entitled "An act concerning proceedings on bonds and mortgages given for the same indebtedness and the foreclosure and sale of mortgaged premises thereunder." *Pamph. L., p.* 255; *Comp. Stat., p.* 3420. Section 1 of the supplement of 1907 provides that "no judgment shall be entered * * * in any action on said bond (*i. e.,* a bond secured by mortgage) unless * * * prior to the beginning of such action * * * there shall be filed in the office of * * * the register of deeds and mortgages of the county * * * a written notice of the proposed action, setting forth," &c.

The required notice was filed in this case, and there is no question of its regularity as to form and substance. The sole point made is that it was not filed "prior to the beginning of the action."

The essential facts are as follows: The summons and complaint, as well as the notice of *lis pendens,* were drawn by Samuel Koestler, bear date June 30th, 1930, and were delivered together to George Schmidt, Jr., to sign as attorney of record, the notice to be filed, and the summons and complaint then to be handed to the sheriff for service. With them was delivered a letter from Koestler, also dated June 30th, instructing Schmidt to sign the papers, but before delivering the summons and complaint to the sheriff, to

file in the register's office the "notice of proposed suit." Schmidt signed as desired, and gave the papers to a young woman clerk in his office "with instructions to file the notice in the office of the register of the county of Essex and to deliver the summons and complaint with copy, to the sheriff of Essex county for service upon the defendant, but at the same time he gave her specific instructions that the summons and complaint aforesaid should not be delivered to the sheriff until after she had filed the aforesaid notice in the office of said register of deeds of Essex county. That said Josephine L. Benker then left the said office of George Schmidt, Jr., Esquire, provided by him with money to pay the necessary filing fees of the register and the service fees of the sheriff, and proceeded to the hall of records in the city of Newark, at which place she first went to the office of the register of deeds of Essex county with the notice of said suit about to be instituted as above entitled, and delivered said notice to the said register for filing and paid the charge for same and same was stamped having been received on July 2d, 1930, at twelve-one P. M., and thereafter said Josephine Benker went to the office of the sheriff of Essex county at the court house in Newark, New Jersey, and delivered to said sheriff for service upon defendant the original summons and complaint together with a copy thereof and paid the sheriff the service fees demanded and said sheriff stamped same as received July 2d, 1930, at twelve-eight P. M., and the same was then served upon defendant on July 10th, 1930." The foregoing is the language of the stipulation.

It is argued that the date inserted in the summons (June 30th) is controlling evidence that suit was begun on that day; but this, we think, may shortly be disposed of. Section 47 of the Practice act of 1903 (*Comp. Stat., p.* 4065) provides in part: Every process shall bear date on the day on which the same shall be issued, and the date shall be *prima facie* evidence that it was issued on that day, but such date may be disproved whenever the same shall come in question; if any person shall antedate any process, he shall forfeit $100 to the party aggrieved and also be liable to him for all

damages which he may sustain thereby." It is intimated in the brief that the true date may be shown only to prevent fraud; but we do not so read the statute, which is broad enough to cover all forms of mistake, oversight, &c. There is a penalty for antedating, but that is all. See *Morris Canal, &c., Co.* v. *Mitchell,* 31 *N. J. L.* (at *p.* 102). The same rule obtained at common law. *Wambaugh* v. *Schenck,* 2 *Id.* (*Penn.*) *229; *Allen* v. *Smith,* 12 *Id.* 159, 166. The date may be disproved, but the right to disprove is not limited to any particular party. We see no merit in this point.

The stipulation does not state when the papers were handed to Schmidt, but he seems to have signed them at once and handed them to his clerk with the instructions just mentioned. She "then" left his office and went to Newark and gave the notice to the register who stamped it as received July 2d, twelve-one P. M. The natural and obvious inference is that all this took place on the morning of July 2d, though this seems immaterial, for even if it took the clerk two days to get to Newark we shall see that the result is the same.

We come, then, to the serious question in the case: Was the action begun in contemplation of law, before or after the filing of the notice?

Our important cases bearing on the "beginning of an action are *Whitaker* v. *Turnbull,* 18 *N. J. L.* 172; *Updike* v. *TenBroeck,* 32 *Id.* 105; *McCracken* v. *Richardson,* 46 *Id.* 50; *Lynch* v. *New York, Lake Erie, &c., Railroad Co.,* 57 *Id.* 4; *County* v. *Pacific Coast Borax Co.,* 67 *Id.* 48; affirmed, 68 *Id.* 273, and *Wilson* v. *Clear,* 85 *Id.* 474.

In Whitaker *v.* Turnbull, the statute of limitations was invoked. It appeared that plaintiff's attorney had drawn and sealed the summons in time, and with it called on defendant and asked him to sign an appearance thereto. Defendant asked a little time, and there was some delay which resulted in appearance being signed after the statute had run. The rule laid down by the trial court, and approved by the Supreme Court, was that when the writ is issued out of the office of the clerk, or of the attorney acting as agent of the clerk, "in good faith, for the purpose of being served

or proceeded on, and that purpose is not afterwards abandoned, it is for all material purposes the commencement of the suit." The Chief Justice pointed out that the defendant had notice that the suit had been commenced. "In fact, the writ was on its way to the sheriff * * * and would have been delivered to him, if the defendant had not stipulated," &c. (page 175).

We may properly stress at this point the two features of the rule, one of which is that there must be a purpose to serve the writ; and the other, that such purpose may be abandoned.

The case of *Updike* v. *TenBroeck, 32 N. J. L.* 105, went to the limit in avoiding the bar of the statute of limitations. There was a vigorous dissent by Mr. Justice Elmer, at the time, and the case was later severely criticized by Chief Justice Beasley, as will presently be seen. The opinion is long, and we content ourselves with pointing out that (on page 110) the right to abandon the writ is recognized, and the court holds that it was not abandoned. There follows, on the next page, a differentiation of some outside cases, mostly of New York, which will presently be examined. As to these, the opinion points out, most pertinently to the present case, that those decisions "are chiefly, if not all, where the writ was obtained *preparatory to a cause of action, and its use was depending upon a certain state of facts, existing or not when it was used, going to the right of the action.* In these cases the courts held the suit as commenced not until the writ was actually used, and after the cause of action had become fixed." (Italics ours.) The cases there cited are as follows: *Visscher* v. *Gansevoort,* 18 *Johns.* 496; *Bronson et al.* v. *Earl,* 17 *Johns.* 63; *Ross* v. *Luther,* 4 *Cowen* 158; *Boughten* v. *Bruce,* 20 *Wend.* 234; *Burdick* v. *Green,* 18 *Johns.* 20; *Seaver* v. *Lincoln,* 21 *Pick.* 267.

The next case in chronological order is *McCracken* v. *Richardson,* 46 *N. J. L.* 50. Action on two notes: The statute of limitations as to one ran out February 12th, as to the other on February 24th. Summons tested February 10th, returnable the 21st. The sheriff delayed service and after en-

larging the return day made service on March 1st. The court said the summons was issued before the action was barred, and given at once to the sheriff. "The plaintiff and his attorney had no intention at any time to abandon the writ."

*Lynch* v. *New York, &c., Railroad Co.,* 57 *N. J. L.* 4, was a case in which plaintiff's attorney let the statute run because his client failed to pay a retainer. He drew and sealed the writ, intending to send it to the sheriff, if, as and when the money was forthcoming. Meanwhile the statute ran out. The vigorous language of Chief Justice Beasley need not be reproduced in full, but his disapproval of Whitaker *v.* Turnbull was manifest. However, we quote the following: "The view of the counsel of the plaintiff is, * * * that if a writ be sealed and tested *without any present purpose of immediate service, ipso facto,* the suit is commenced." Updike *v.* Ten-Broeck is cited (with disapproval) and distinguished, and judgment for defendant was affirmed. This case, it will be observed, is one where the writ was drawn and sealed "preparatory to a cause of action, and its use was depending on a certain state of facts, existing when it was [to be] used" though not going to the right of action. In short, the sending of the summons to the sheriff was subject to the condition precedent that the money be paid in, and failing that, the attorney had no intent that it be served.

The leading case of *County* v. *Pacific Coast Borax Co.,* 67 *N. J. L.* 48; *affirmed,* 68 *Id.* 273, exhibits a delivery of summons to the sheriff in due time with notice from the attorney that instructions as to the method of service would be given later. Service was made after the statutory year had expired. Mr. Justice Garrison, in the Supreme Court, says that the rule in Whitaker *v.* Turnbull was so far modified by the Lynch case "as to require something more than the mere testing and sealing of the writ in order to constitute the commencement of the suit. What that 'something more' is the decision in question does not state; but it is evident from the context that it must be something capable of evincing that the writ is *actually out for the purpose of being*

*served on the defendant."* He quotes Chief Justice Beasley as saying: "Out for immediate service," and he quotes Chief Justice Hornblower as saying "for the purpose of being served." He quotes Mr. Justice Elmer in his dissenting opinion as saying "actually put in motion to be served," and concludes (page 53): "The rule deducible from this course of decisions is, perhaps, best summarized in the language last quoted, viz., that a suit is begun when process, duly tested and issued, is actually put in motion for the purpose of being served."

The opinion in this court says that the action was commenced when process duly tested and issued was put in the hands of the sheriff for the purpose of being served.

The last case in this state requiring notice is *Wilson* v. *Clear,* 85 *N. J. L.* 474, in the Supreme Court, wherein the rule is reiterated, that "an action is commenced and sued, within the meaning of the statute of limitations, as soon as the summons is signed and sealed in good faith, for the purpose of *immediate* service, and that purpose is not afterwards abandoned."

It may be noted that in the County case it was unnecessary to consider whether suit was begun before the summons reached the sheriff.

The tests of commencement of an action at law, deduced from these cases seem to be:

1. The summons (or other writ) must have been signed and sealed.

2. There must be a present intent to make immediate service, *i. e.,* as soon as reasonably may be.

3. That intent must be unconditional, and not dependent on some condition to be fulfilled before service.

4. The intent may be abandoned (presumably before service is made).

5. Whether the action is not commenced until the writ is handed to the sheriff, is not clear.

The soundness of the rule that, after all the honest and definite intent of the attorney is the important test, and that the courts must rely on the integrity and good faith of

those they admit to practice before them, is shown by the well settled old law in two analogous classes of cases. The first is that prevailing in certain cases of *certiorari,* particularly in forcible entry and detainer cases and unlawful detainer cases, wherein the attorney for defendant, anticipating that judgment would go against his client, was ready at the day set for decision with a writ of *certiorari,* not only signed and sealed, but allowed as well by a justice of the Supreme Court, in his pocket, all ready to be produced and served at the pronouncement of judgment. Thus, in *Mairs* v. *Sparks,* 4 *N. J. L.* *369, the writ was presented in complete form as soon as the judgment was rendered and it was urged that it must have been allowed before judgment. Chief Justice Kirkpatrick said: "This court will not, in this way, inquire into the time of making the *allocatur* on the *certiorari.* It is the constant practice, under certain circumstances, to make the *allocatur* so that the party may have it in his possession when judgment is rendered, and it is necessary that it should be so. In many cases it is the only way in which an execution and a change of possession can be prevented, no matter how illegal the proceedings may have been. As soon as judgment is pronounced a writ of error may be presented, and the party is not bound to wait until the judgment is enrolled."

Mr. Justice Southard expressed some dissatisfaction with the practice, "but considered it as having heretofore received the sanction of the court, and therefore settled." The case was thereafter considered on its merits and the judgment reversed, 5 *N. J. L.* *513. The practice was further recognized in *Delancy* v. *Lawrence,* 11 *Id.* 25, and *Moore* v. *Bonnell,* 31 *Id.* 90. In *Elder* v. *District Medical Society,* 35 *Id.* 200 (at *p.* 203), the Supreme Court called the practice exceptional, and pointed out that "the writ is not *used* until the final determination below." This we think tantamount to saying that the action in *certiorari* in such case is not begun until the attorney proceeds to take it out of his pocket for the purpose of service; and that in the readily conceivable case of the judgment being in favor of his client, the writ is taken out of his pocket only to be thrown into the waste basket, and the action in *certiorari* is never begun at all.

The other analogous class of cases, perhaps more directly in point than merely analogous, is where, under the old law of arrest in civil actions there has been a negligent escape, either from jail or by transgressing "the limits," and the plaintiff in the original action desires to hold the sheriff for the debt. The law, as taken from 2 *Arch. Prac.* 892 (*6th Eng. Ed.*) is this: "If the escape be voluntary [that is, if it be with the consent, privity, or knowledge of the marshal or warden] the writ may be issued at any time; but if it be negligent only, then it must be issued during the escape and before the party is retaken or returned into the marshal's or warden's custody, for the marshal or warden may plead such retaking or return. You should always, therefore, when issuing the writ, have witnesses who can speak to its being issued whilst the party is out of custody." Citing *Bonafous* v. *Walker,* 2 *T. R.* 131. In New York, the Supreme Court, in *Lansing* v. *Fleet,* 2 *Johns. Cas.* 3, said (at *p.* 5): "In case of a negligent escape, both the plaintiff and the sheriff have a right to retake the prisoner; but the plaintiff may elect to proceed against the sheriff, who will be liable to him *unless by fresh pursuit he retakes the prisoner before action brought."* (Italics ours.)

The point to be covered, therefore, was to "issue the writ" while the party was out of custody, *i. e.,* after the negligent escape, but before a return, voluntary or by recapture. For if "issued" before the escape or after the return, the writ would be futile. Hence in *Visscher* v. *Gansevoort,* 18 *Johns.* 496, the attorney hearing that the prisoner was off the limits, delivered the summons or other writ to one Ackerman (as his agent) with instructions "to go and see M. [the prisoner] off the jail liberties, so that he could swear to the fact, and *then* deliver the writ" (against the sheriff) "to the coroner" (for service). The court said "the only question is whether the *suit was commenced* when M. * * * was off the jail limits."

"It was decided in *Burdick* v. *Green,* 18 *Johns.* 20, that if a writ was actually made out, and sent to the sheriff or his deputy, by mail or otherwise with a *bona fide* and *absolute*

intention of having it served, it would be a good commencement of the suit; but we held that such intention must be *positive and unequivocal.* Here the writ was made out and delivered to a messenger, as we construe the facts, *conditionally;* that is, he was directed to go and see Mounsey off the limits, and then deliver the writ to the coroner, but if he went and did not see him off the limits, then it is implied that he was not to deliver the writ to the coroner. When, therefore, the attorney issued the writ the intention to commence the suit was not absolute, positive and unequivocal; and we cannot admit that the messenger or bearer of the writ shall have it in his power to decide whether the suit shall be commenced, by any event subsequent of the delivery of the writ to him, short of its being actually put into the hands or left at the office of the coroner."

In *Ross* v. *Luther, 4 Cowen* 158, a suit of the same character, the attorney gave the writ to his clerk, one Skinner, to be "issued" when the prisoner, named Wait, was off the limits. Skinner later satisfied himself of that fact, and went to hunt up the coroner. "The judge charged the jury that the suit must be considered as commenced when Skinner started to deliver the writ to the coroner, after he had determined absolutely to issue it; and not from the time when he first took it from the office, without any certain intention of delivering it." This was held error, Judge Sutherland remarking: "The clerk is to be considered as the agent or messenger of the attorney, and as acting in obedience to his orders when he took the writ and left the office with it. That his instructions had been given him at some previous time and not at the precise moment when he left the office, cannot vary the case. He left the office, then, with instructions to deliver the writ, if Wait was beyond the limits. This case is, then, precisely within that of Visscher *v.* Gansevoort, in which the court say, 'when the attorney issued the writ, the intention to commence the suit was not absolute, positive and unequivocal; and we cannot admit that the messenger or bearer of the writ shall have it in his power to decide, whether the suit shall be commenced by any event subsequent to the

delivery of the writ to him, short of its being actually put into the hands, or left at the office of the coroner.' "

In *Boughton* v. *Bruce,* 20 *Wend.* 234, an action in replevin, it was necessary to make a demand before beginning suit. The writ was made out, and plaintiff had the sheriff appoint a special deputy to serve it, plaintiff retaining the writ. The two went together to make the demand, which was refused, and the writ was then handed to the deputy for service, and served. The trial court nonsuited on the theory that the suit was commenced when the sheriff endorsed the deputation on the writ. This was held error, Chief Justice Nelson remarking: "It cannot be that all control over the writ passes from the party on procuring the special deputation, or that he may not afterwards issue it, or omit to do so, at his discretion."

In *Seaver* v. *Lincoln,* 21 *Pick.* 267, the writ was actually delivered to an officer, but with instructions not to serve it until defendant, an endorser on a note, had been served with notice of dishonor, and if he paid the note, then not to serve the writ at all. The instructions were followed; and in error it was held that the suit was not commenced until the event contemplated had taken place.

These last four cases are discussed without disapproval, and distinguished in *Updike* v. *TenBroeck,* 32 *N. J. L.* 111, the distinction being that in Updike *v.* TenBroeck "the *cause of action* was not depending upon the answer for which the plaintiff was waiting" (as in the New York cases) but was complete, and that plaintiff's attorney, having about three months ahead of him before the next term, to which the summons was returnable, refrained from sending it to the sheriff in view of pending negotiations.

When we turn to the facts of the case before us, which on the point under consideration are undisputed, we find that only one of the four conditions above stated was met, viz., the first. The writ was indeed signed and sealed; but there was no present intent to make immediate service, but only a conditional intent depending on whether or not the notice of *lis pendens* had first been filed, and service, if any, not to be

made until after such filing. The matter of abandonment is not in the case, as it happens, although there might have been an abandonment. However, in the readily conceivable situation of the clerk finding the register's office closed at twelve-one on a Saturday, with a legal holiday coming on Monday, so that the notice could not be filed until nine A. M. Tuesday, if appellant's argument be correct, notwithstanding the definite instructions to the lawyer's clerk not to deliver the summons to the sheriff until after the notice was filed, the action would have been begun nearly three days prior to such filing. The common sense view of such a state of things is stated in the old New York cases where the lawyer's clerk was to deliver the summons to the office only if and when he found the prisoner off the limits and before he returned. Those cases hold that the intent to commence the suit must be absolute, positive and unequivocal, and that entrusting the writ to the clerk on terms would not constitute a commencement of the action. We concur in that view, and are clearly of the opinion that the action was not "commenced" until after the notice had been filed, at which point the intent to commence the suit became absolute and not conditional.

Taking up the other main branch of the appeal, appellant argues that he should have been made a party to the foreclosure but was not made a party; that he was not notified and knew nothing about it, and therefore had no opportunity to question the amount due on the bond, which he seeks in this suit to do by setting up various claims, mostly in the nature of counter-claim, all of which were struck out as either sham or frivolous.

The act known as the Budd-Deacon act, first enacted in 1880 and amended in 1881 (*Comp. Stat., pp.* 3420 *et seq.*) was intended to do away with the former practice of obtaining a deficiency decree in a mortgage foreclosure.

Deficiency decrees in Chancery seem not to go back of 1866, when a supplement to the Chancery act, Section 5, permitted a decree for payment of excess of mortgage debt over net proceeds of the sale, &c., by any party liable either at law or in equity.

Prior to this, in 1860, Chancellor Green held that recovery on the bond must be at law, unless some outside equity was present—in that case there was an assumption and this was held *purely equitable* (*Klapworth* v. *Dressler*, 13 *N. J. Eq.* 62, 66), and a decree for deficiency was made; and in *Osborne* v. *Tunis* (1856), 25 *N. J. L.* (at *p.* 651), a proceeding at law after foreclosure was recognized as permitting the bondsman to redeem.

In *Rev.* 1877, *p.* 118 (Section 76 of the Chancery act) the 1866 section appears with a *proviso* that there must be a *prayer to that effect in the bill*. The intent of the proviso was, of course, that one liable on the bond and made a party should have notice in the bill by the insertion of a special prayer for deficiency; and by rule 38 of Chancery (*Nix. Dig.* 1868, *p.* 1096) notice of the prayer had to be served with the subpœna ticket or mailed in case of publication.

It will be seen, therefore, that under the equity practice established under the act of 1866, if a mortgagee intended to enforce his right to recover for a deficiency, it was necessary for him to insert a prayer in the bill to that effect in the first place, and in the second, to attach to his subpœna a ticket specially notifying anyone concerned that a decree for deficiency would be prayed against him. Naturally, under that practice, it would seem to have been necessary that where the mortgaged premises had been conveyed by the original mortgagor and bondsman, such bondsman must be brought in as a party in order to support a decree for deficiency against him. It seems likely that the framers of the Budd-Deacon act considered that a great relief was being extended to mortgagors by abolishing the decree for deficiency as part of the foreclosure as was done by section 1 of the act of 1880 (*Pamph. L., p.* 255) and indeed the mortgagor was relieved by that act from the liability to a suit in equity to foreclose, and at law on the bond, at the same time. The act of 1880, by section 3, in providing that as soon as judgment for deficiency should be rendered the foreclosure should remain open for six months with a right of redemption gave that right of redemption solely to the owner and apparently

did not include the original bondsman under whom the existing owner held. This feature of the law was under consideration of the court in *Pennsylvania Co.* v. *Marcus,* 89 *N. J. L.* 633, wherein the late Mr. Justice Bergen, at pages 635 and 636, reviews the history of the statute and points out at the top of page 636 "the amendment of section 3, giving to the person against whom the judgment was recovered the right to redeem, instead of limiting it to the owner as theretofore.

"The supposed evil which this statute was intended to cure, arose out of the fact that many persons after giving a bond and mortgage would sell the property, subject to the mortgage, and on its foreclosure have no notice thereof, and thus no opportunity to protect himself by redemption of the property, by purchase or otherwise, and would be compelled to pay a deficiency, although the mortgaged premises might in fact have a market value greater than the debt, or at least the obligor in the bond might be willing to take the property for the debt. The remedy given was that if the holder of the bond undertook to enforce it for a deficiency, he must do so within six months after the sale, and if he recovered a judgment thereon the effect was to open the sale and to permit the person against whom the judgment was entered to redeem. He might, perhaps, have no notice of the foreclosure proceedings, but he would have notice of the suit against him with an opportunity to redeem if he desired."

The rule has long been settled that the maker of a bond secured by mortgage on property owned by him, and who has conveyed away the property absolutely is not a necessary party to a foreclosure of the mortgage, though the complainant may join him as a party; and where he has been so joined, if a personal action be brought against him for the deficiency, the decree would be *res judicata* as to any defense he might have set up to the bond. The earlier cases on the first branch of the rule are *Vreeland* v. *Loubat,* 2 *N. J. Eq.* 104; *Chester* v. *King, Ibid.* 405; *Johnes* v. *Outwater,* 55 *Id.* 398, 402; *Savings Association* v. *Vandervere,* 11 *Id.* 382 (where it was said that the personal representatives of a husband who signed a joint bond with his wife accompany-

ing a mortgage on her property) "can have no more interest in taking the account in this [foreclosure] case than a mortgagor after he has parted with his interest in the mortgaged premises." As to the second branch: In *Andrews* v. *Stelle,* 22 *Id.* 478, in this court, it was held that a mortgagor who has conveyed away is not a necessary party, but if made a party, and setting up the defense of usury, he has a right of appeal, because the decree would bar him from setting up the same defense to a suit on the bond.

On fundamental principles it would seem that where the original bondsman and mortgagor has conveyed away the property, and the mortgage has been foreclosed without making him a party, and he has known nothing of the proceeding, as in this case, he is not concluded by the finding of the master or the decree in foreclosure as to the amount actually due on the bond that he made, and for which he remains personally liable. For example, he himself, or even his grantee, may have made a substantial payment which was not credited. It is even imaginable that the grantee might collude with the holder of the mortgage to swell the amount of the decree. Consequently it remains to ascertain whether any substantial defense of this character in the present case was improperly overruled.

The brief particularizes these defenses as follows:

1. That the amount of deficiency demanded by plaintiff was not correct.

2. That same was not due plaintiff from defendant.

3. That the premises were sold at a grossly inadequate price.

4. That the sale was not confirmed in a legal manner.

5. That defendant was entitled to recoup such sums as plaintiff had collected from rents and other sources.

6. That by conduct of plaintiff the security had depreciated.

7. That the value of the premises far exceeded the amount due on the bond.

8. That the bid at sheriff's sale was merely nominal, and to reduce sheriff's fees.

Propositions 1 and 2 are disposed of by the written stipulation that if plaintiff is entitled to a verdict the amount

shall be $64,250 with interest from February 25th, 1930, subject to reduction by such amount as defendant can establish by his recoupment, if the order striking it out be reversed on appeal. So that in the first instance the debt and its amount are stipulated.

Proposition 3 is not maintainable by this defendant. It goes with Number 7, that the premises were worth more than the amount due on the bond, and Number 8, that the bid at the sale was a nominal one. Whatever might be said of these propositions as bases for some direct attack on the sale in a suitable proceeding, they are not cognizable here.

Proposition 4 seems to be wholly without factual support, and is wholly irrelevant, if it was correctly held in *Development Association* v. *Nurock,* 10 *N. J. Mis. R.* 23, that suit for deficiency would lie before confirmation of the sale.

Proposition 5 does not seem to be covered by any part of the answer or recoupment. If it refers to rents collected after the sale, it is manifestly frivolous, and in line with a claim that a resale at a profit should be credited on the deficiency. See *Berman* v. *One Forty-five, &c.,* 109 *N. J. Eq.* 256.

Proposition 6, if cognizable, is not supported by any proof. It is apparently based on the recoupment, which was struck out as sham, and properly so, as it is fully met by plaintiff's affidavits, and not supported by any affidavit of defendant.

Finally, it is argued that the complaint was insufficient in law and should have been struck out on defendant's motion. Our examination of this complaint fails to reveal any substantial or even formal defect.

The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, BODINE, DONGES, BROGAN, HEHER, KAYS, HETFIELD, WELLS, KERNEY, JJ. 12.

*For reversal*—None.